■ ARNOLD WANDEL et al., Appellants, v JAMES DIMON et al., Respondents. JPMORGAN CHASE & CO., Nominal Respondent. [23 NYS3d 200]—

Order, Supreme Court, New York County (Jeffrey K. Oing, J.), entered January 17, 2014, which granted, without prejudice, defendants' motion to dismiss the complaint for failure to show that pre-suit demand on the board of directors of nominal defendant JPMorgan Chase & Co. was excused, unanimously affirmed, without costs.

In 2012, in what became known as the "London Whale" debacle, JPMorgan's synthetic credit portfolio (SCP), managed by traders in its Chief Investment Office (CIO), lost at least $6.2 billion as a result of high-risk trading activities, despite public representations that the CIO was engaged in low-risk hedging activities. In this derivative action for breach of fiduciary duties, plaintiffs allege that the CIO losses were "the direct consequence of Defendants' failures to properly implement appropriate internal controls, oversight and risk management."

Plaintiffs did not serve a demand on JPMorgan's Board prior to filing suit. Rather, they allege that a demand would have been futile because at least a majority of the Board faces a substantial likelihood of liability for consciously disregarding numerous red flags warning of the CIO's lack of oversight and pervasive disregard of its internal mandate and risk limits, including letters from a shareholder advocacy group, warnings from regulators, and risk-limit breaches. Plaintiffs also allege

that demand is excused because the Board reached a self-serving conclusion of no breach without conducting a reasonable and good faith investigation into the CIO's misconduct.

The issue whether a pre-suit demand is required or excused is governed by the law of Delaware, the state of incorporation of JP Morgan (*Central Laborers' Pension Fund v Blankfein*, 111 AD3d 40, 45 n 8 [1st Dept 2013]; *David Shaev Profit Sharing Account v Cayne*, 24 AD3d 154 [1st Dept 2005]). Under Delaware law, in order for a derivative suit to go forward, a shareholder must either make pre-suit demand on the corporation or seek to be excused from making a demand on grounds of futility (Del Ch Ct Rules rule 23.1; *see In re Citigroup Inc. Shareholder Derivative Litig.*, 964 A2d 106, 120 [Del Ch 2009]).

Plaintiffs' claim, based on the Board's alleged failure to properly exercise its oversight duties, is premised on the theory of liability articulated in *In re Caremark Intl. Inc. Derivative Litig.* (698 A2d 959, 968 [Del Ch 1996]). Under *Caremark*, where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard of their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith (*see Stone ex rel. AmSouth Bancorporation v Ritter*, 911 A2d 362, 370 [Del 2006]). However, while a director has a duty to attempt in good faith to ensure that an adequate information and reporting system exists, "no rationally designed information and reporting system will remove the possibility that the corporation will violate laws or regulations, or that senior officers or directors may nevertheless sometimes be misled or otherwise fail reasonably to detect acts material to the corporation's compliance with the law" (*Caremark* at 970).

The *Caremark* theory of recovery "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment" (*Caremark*, 698 A2d at 967). The requisite bad faith indifference is difficult to prove; "[e]ven a showing of gross negligence by a majority of the Board will not suffice" (*In re SAIC Inc. Derivative Litig.*, 948 F Supp 2d 366, 381 [SD NY 2013], *affd sub nom Welch v Havenstein*, 553 Fed Appx 54 [2d Cir 2014]). Furthermore, "where a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation . . . only a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability" (*Caremark*, 698 A2d at 971). The likelihood of direc-

tors' liability is significantly lessened where, as here, the corporation exculpates the directors from liability to the extent permitted by Delaware law (*see DiRienzo v Lichtenstein*, 2013 WL 5503034, \*28, 2013 Del Ch LEXIS 242, \*95 [Sept. 30, 2013, No. 7094-VCP], *appeal refused* 80 A3d 959 [Del 2013]; *In re Goldman Sachs Group, Inc. Shareholder Litig.*, 2011 WL 4826104, \*18, 2011 Del Ch LEXIS 151, \*58-59 [Oct. 12, 2011, No. 5215-VCG]).

In *Caremark* cases, allegations of demand futility are analyzed under the principles set forth in *Rales v Blasband* (634 A2d 927, 933-934 [Del 1993]; *Wood v Baum*, 953 A2d 136, 140 [Del 2008] [the Rales test governs when "the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties"]). Under *Rales*, the plaintiff must plead particularized facts raising "a reasonable doubt that, [at] the time the complaint [was] filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand" (*Rales*, 634 A2d at 934). To rebut the presumption of disinterestedness, the plaintiff must plead particularized facts that, if proved, would establish that a majority of the directors face a "substantial likelihood" of personal liability for the wrongdoing alleged in the complaint (*id.* at 936 [internal quotation marks omitted]). A "mere threat" of liability is insufficient (*id.* [internal quotation marks omitted]; *see also In re Goldman Sachs Group, Inc. Shareholder Litig.*, 2011 WL 4826104 at \*18, 2011 Del Ch LEXIS 151 at \*59 ["A simple allegation of potential directorial liability is insufficient to excuse demand, else the demand requirement itself would be rendered toothless, and directorial control over corporate litigation would be lost"]).

Here, plaintiffs failed to make the requisite showing that the board could not exercise independent business judgment because a *majority* of directors faced a substantial likelihood of liability for the challenged conduct. At the time plaintiffs filed their complaint, the board consisted of 11 directors. At most, plaintiffs showed that four of them—inside director Dimon and the three members of the Risk Policy Committee—faced a substantial likelihood of liability (*see Loveman v Lauder*, 484 F Supp 2d 259, 266-269 [SD NY 2007]). "Because a majority of the directors are independent, demand is not excused" (*Blaustein v Lord Baltimore Capital Corp.*, 84 A3d 954, 959 [Del 2014]; *Wayne County Empls.' Retirement Sys. v Dimon*, 2015 WL 6079958, \*2, 2015 US App LEXIS 17936, \*45 [2d Cir, Oct. 16, 2015, No. 14-3245]).

In *Wayne County*, the Second Circuit held that the county retirement system's pleading, which raised claims similar to the instant claims arising out of the London Whale debacle, did not satisfy the requirements for alleging a *Caremark* claim predicated on failed oversight of business risk. Although the complaint cited instances in which warning signs of excessive risk reached members of the Board, and identified members of the Board who received particular warnings, the Second Circuit held that "Wayne County cannot sustain its burden by relying on red flags that reached a single Board member or a minority of the Board: 'Delaware law does not permit the wholesale imputation of one director's knowledge to every other for demand excusal purposes'" (2015 WL 6079958 at *2, 2015 US App LEXIS 17936 at *4-5, quoting *Desimone v Barrows*, 924 A2d 908, 943 [Del Ch 2007]). Noting that "the most urgent signs were given in a single quarter in which an audit report was prepared and delivered, and the severe loss followed the audit report by a few days or a couple weeks," the court also found that "even if there were red flags warning of facially improper business risk, the warning signs were not received, let alone ignored, over a sustained period of time[,] [and] Wayne County has not pled a 'sustained or systematic failure of the [B]oard to exercise oversight,'" as required by *Caremark* (2015 WL 6079958 at *2, 2015 US App LEXIS 17936 at *5). This reasoning applies equally to plaintiffs' claims in this action.

Plaintiffs' argument that demand was excused because the board had already reached the conclusion that it was not responsible for the events about which plaintiffs complain is unavailing (*see generally Desimone*, 924 A2d at 950; *In re infoUSA, Inc. Shareholder's Litig.*, 953 A2d 963, 986 [Del Ch 2007]). Concur—Tom, J.P., Renwick, Andrias and Moskowitz, JJ.