(March 31, 2016)

■ ASBESTOS WORKERS PHILADELPHIA PENSION FUND, Plaintiff, and MARK SVECHIN, Derivatively on Behalf of JPMORGAN CHASE & COMPANY, Appellant, v JAMES A. BELL et al., Respondents, et al., Defendant. [29 NYS3d 274]—

Judgment, Supreme Court, New York County (Charles E. Ramos, J.), entered June 13, 2014, dismissing the complaint, unanimously affirmed, with costs.

This derivative action was brought by both an institutional and an individual shareholder of JP Morgan Chase & Co. (JPMorgan), without any pre-suit demand having been made.

The named defendants are 11 current and former members of JPMorgan's Board of Directors and two former officers. The claims arise out of JPMorgan's securitization and sale of its subprime and other troubled residential mortgages. Plaintiffs' claims are mainly based on allegations that defendants were aware that these mortgages would fail and that they authorized the sale of securities holding these mortgages (RMBS) as a means of removing toxic assets from JPMorgan's balance sheet without sufficiently accounting for reserves. Plaintiffs allege that the board's actions were intended to make JP Morgan appear more financially secure than it actually was in the short run, all the while knowing that the substantial losses (in the billions of dollars) would subsequently be realized by JPMorgan, based upon repurchase obligations and other lawsuits by the government and RMBS investors. Plaintiffs also claim that in January 2007 the board improperly abdicated its obligation of board oversight by authorizing a management committee to sell off JPMorgan's toxic RMBS without any further action by the board. That authorization was subsequently extended two additional times.

On this appeal the only issue is whether Supreme Court correctly dismissed the action on the ground that plaintiffs neither made a pre-suit demand on the board nor pleaded facts sufficient to support a claim of demand futility. For the reasons set forth below, we find that the motion court correctly determined that plaintiff was not excused from making a pre-suit demand on the board and, consequently, that the complaint was properly dismissed.

Preliminarily we reject plaintiffs' argument that to the extent their claims are premised on an abdication of responsibility, it is a direct claim for which no pre-suit demand is required. Here, because plaintiffs could not prevail on their claims without also showing injury to the corporation, the claims are derivative not direct, implicating the law of pre-suit demands (*see Tooley v Donaldson, Lufkin & Jenrette, Inc.*, 845 A2d 1031 [Del 2004]).

Since JPMorgan is incorporated under Delaware law, Delaware law applies to plaintiff's claims and the issue of demand futility (Del Ch Ct Rules rule 23.1; *Wandel v Dimon*, 135 AD3d 515 [1st Dept 2016]; *see e.g. Siegel v J.P. Morgan Chase & Co.*, 103 AD3d 598 [1st Dept 2013], *lv denied* 21 NY3d 856 [2013]; *In re Citigroup Inc. Shareholder Derivative Litig.*, 964 A2d 106, 120 [Del Ch 2009]). In Delaware, as a condition precedent to a plaintiff bringing a shareholder derivative action on behalf of a corporation, the plaintiff must make a pre-

suit demand that the board pursue the contemplated action (*see e.g. Simon v Becherer*, 7 AD3d 66 [1st Dept 2004]). A pre-suit demand upon a board may be excused, however, if such a demand would have been "futile." Where the underlying lawsuit seeks to challenge affirmative board action, a two prong test is applied in assessing the futility of such a demand (*Aronson v Lewis*, 473 A2d 805, 814 [Del 1984], *overruled in part on other grounds Brehm v Eisner*, 746 A2d 244 [Del 2000]). The *Aronson* test is "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment" (*Aronson v Lewis*, 473 A2d at 814). Since this test is in the disjunctive, if either prong is satisfied, pre-suit demand is excused (*Brehm v Eisner*, 746 A2d at 256). On the other hand, where a complaint alleges board inaction, demand futility can be established by particularized facts creating a reasonable doubt that at the time the complaint was filed, the board could not have properly exercised its independent and disinterested business judgment in responding to the demand (*In re Goldman Sachs Group, Inc. Shareholder Litig.*, 2011 WL 4826104, 2011 Del Ch LEXIS 151 [Oct. 12, 2011, No. 5215-VCG], *affd sub nom. Southeastern Pennsylvania Transp. Auth. v Blankfein*, 44 A3d 922 [Del 2012]; *Rales v Blasband*, 634 A2d 927 [Del 1993] [*Rales* test]). Under either standard, plaintiffs have not satisfied the requirements of demand futility.

Plaintiffs did not plead with particularity facts establishing that a majority of the board at the time they commenced this action was interested or lacked independence. With the exception of Dimon, who was both a director and officer of JPMorgan, the board members were all outside directors. Independence requires that a director's decision be based on the merits of the subject before the board rather than extraneous considerations or influences (*see In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A2d 808, 821 [Del Ch 2005], *affd* 906 A2d 766 [Del 2006]). No claim is made that any of the outside directors stood on both sides of the transactions at issue or that any of them stood to receive any personal financial gain. Rather the claim that the individual board members lack independence is based on plaintiffs' argument that they will likely face individual liability for their acts. The fact that a director will be called upon to consider whether to sue himself or herself does not, in itself, warrant a conclusion that he or she lacks independence (*see e.g. Rales v Blasband*, 634 A2d at 936). The alleged facts must, instead, support a conclusion that the potential for liability rises to the level of substantial likelihood (*In re*

*Citigroup Inc. Shareholder Derivative Litig.*, 964 A2d at 121). Where, as here, the corporate charter provides that directors are exculpated from liability to the extent authorized by Delaware Code Annotated, title 8, § 102 (b) (7), the likelihood of liability is significantly lessened (*Wandel v Dimon*, 135 AD3d at 516-517). Liability ensues only for fraudulent, illegal or bad faith conduct and demand futility requires particularized allegations that the board actions were made with scienter, that is with actual knowledge that its conduct was legally improper (*see In re Goldman Sachs Group, Inc. Shareholder Litig.*, 2011 WL 4826104, *18, 2011 Del Ch LEXIS 151, *58-59; *Security Police & Fire Professionals of Am. Retirement Fund v Mack*, 93 AD3d 562 [1st Dept 2012]). Although plaintiffs state that the board's actions were made in bad faith, the facts pleaded do not support such a conclusion. In fact, Delaware courts have rejected similar arguments in connection with demand futility on claims involving alleged improprieties in connection with subprime mortgages and financial institutions (*see In re Goldman Sachs Group, Inc. Shareholder Litig.*, 2011 WL 4826104, *19-20, 2011 Del Ch LEXIS 151, *64-67; *In re Citigroup Inc. Shareholder Derivative Litig.*, 964 A2d at 130-131; *see Wandel v Dimon*, 135 AD3d at 517-518). We likewise reject plaintiffs' argument.

The second prong of *Aronson*, requiring particularized allegations creating reasonable doubt that the challenged transaction was not the product of a valid exercise of business judgment, also was not satisfied by plaintiffs. Plaintiffs contend that the board's action, including the adoption of the January 2007 resolution delegating authority to a management committee, was not a valid exercise of business judgment. However, this factual assertion examines the board's course of action in hindsight and hinges on certain warning signs that plaintiff alleges the board failed to heed, including some losses that reverted back to JPMorgan's balance sheet by September 2008. Delaware law presumes that in making a business decision the board of directors acts in good faith and in the honest belief that the action is taken in the best interests of the company (*In re Walt Disney Co. Derivative Litig.*, 906 A2d 27, 52 [Del 2006]). In order to satisfy the second prong of the *Aronson* test, plaintiffs are required to plead particularized facts sufficient to raise a reason to doubt that (1) the action was taken honestly and in good faith or (2) the board was adequately informed in making the decision (*In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A2d at 824). These facts do not rebut the presumption of regularity of the board's decision making process (*Brehm v Eisner*, 746 A2d at 259). Although risky, the

conduct plaintiff challenges, the board's authorization of the securitization and sale of investments, involves "legal business decisions that were firmly within management's judgment to pursue" (*In re Goldman Sachs Group, Inc. Shareholder Litig.*, 2011 WL 4826104, *20, 2011 Del Ch LEXIS 151, *65 [emphasis omitted]; *see e.g. J.P. Morgan* at 820, 824). The fact that investors later sued or made repurchase demands does not raise a reasonable doubt that the decision to engage in such transactions was not a valid exercise of business judgment (*see In re Goldman Sachs Group, Inc. Shareholder Litig.*, 2011 WL 4826104, *20, 2011 Del Ch LEXIS 151, *66). The Delaware courts have rejected similar allegations involving subprime mortgages and resulting losses (*see In re Goldman Sach Group, Inc. Shareholder Litig.*, 2011 WL 4826104, *19-20, 2011 Del Ch LEXIS 151, *64-67; *In re Citigroup Inc. Shareholder Derivative Litig.*, 964 A2d at 130-132). Thus, neither prong of the *Aronson* test is satisfied and the failure to make a pre-suit demand is not excusable on that basis.

Even if plaintiffs' claims regarding the board abdication constitute board inaction, implicating application of the alternative *Rales* test for demand futility, it fails. Where the claim is that the board directors consciously disregarded a known duty to act, in dereliction of their duties, the burden on the plaintiff to plead particularized and provable facts is even greater. This claim, sometimes referred to as "a breach of duty of care" or a "lack of oversight" claim is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment" (*see In re Caremark Intl. Inc. Derivative Litig.*, 698 A2d 959, 967 [Del Ch 1996]). The test of whether a pre-suit demand is excused in these situations is whether, at of the time the complaint was filed, the board of directors could not have properly exercised its independent and disinterested business judgment in responding to a demand to act (*Wandel v Dimon*, 135 AD3d at 517, citing *Rales v Blasband*, 634 A2d at 934).

To adequately plead a lack of oversight claim, a plaintiff must set forth particularized facts that there was a "sustained or systematic failure" by the board to exercise oversight, demonstrating "the lack of good faith that is a necessary condition to liability" (*In re Caremark* at 971). Plaintiffs' claim that the individual directors are responsible for corporate losses because they failed to monitor corporate operations is insufficient. As under the *Aronson* test, the allegations must be that a majority of the board lacked independence due to a "substantial likelihood," not just a "mere threat" of individual liability

(*Wandel v Dimon*, 135 AD3d at 517). Thus, plaintiffs' allegations regarding the potential of board member personal liability fails for the same reason it fails under the *Aronson* test.

Under these circumstances, a pre-suit demand is not excusable and Supreme Court was correct in granting defendants' motion to dismiss the complaint. Concur—Friedman, J.P., Andrias, Gische and Kapnick, JJ.