U-Trend N.Y. Inv. L.P. v US Suite LLC (2020 NY Slip Op 00383)





U-Trend N.Y. Inv. L.P. v US Suite LLC


2020 NY Slip Op 00383


Decided on January 21, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 21, 2020

Manzanet-Daniels, J.P., Gesmer, Oing, Moulton, González, JJ.


652082/14 10819A 650498/15 10819

[*1] U-Trend New York Investment L.P., etc., Plaintiff-Appellant-Respondent,
v
US Suite LLC, et al., Defendants, Aura Investments Ltd., Defendant-Respondent-Appellant, Hospitality Suite International, S.A., et al., Nominal Defendants.
U-Trend New York Investment L.P., etc., Plaintiff-Appellant-Respondent,
v
Aura Investments Ltd., Defendant-Respondent-Appellant, Yaacov Atrakchi, et al., Defendants-Respondents, Hospitality Suite International, S.A., et al., Nominal Defendants. 
 [And Other Actions]


Morrison Cohen LLP, New York (Y. David Scharf of counsel), for appellant-respondent.
Schulman & Charish LLP, New York (Michael A. Charish of counsel), for respondent-appellant and respondents.



Judgment, Supreme Court, New York County (Charles E. Ramos, J.), entered January 3, 2019, which, insofar appealed from as limited by the briefs, awarded plaintiff (U-Trend) the principal sum of $1,998,711.31 as mortgage damages, limited defendant Aura Investments Ltd.'s liability for looting damages to the period before October 4, 2012, declined to award sale damages and attorneys' fees, and directed that all amounts be paid directly to U-Trend, unanimously modified, on the law and the facts, to reduce the principal amount of mortgage damages so that they represent interest at 13.5% rather than 20%, and otherwise affirmed, without costs. Appeal from order, same court (Andrew Borrok, J.), entered on or about September 24, 2019, which denied Aura's motion to correct or vacate the judgment and for a new trial on mortgage damages, unanimously dismissed, without costs, as academic.
Aura makes various arguments as to why U-Trend should have recovered no damages at all, but they are unavailing.
First, the exculpatory clause in the operating agreement for defendant (in the 2014 case) US Suite LLC (Suite LLC) does not help Aura because it limits the liability of Members, Affiliates, and officers and directors of the above to Suite LLC and the other Member of that limited liability company (defendant [in the 2014 case] 440 West 41st LLC [440]). Aura was not held liable to Suite LLC or 440; rather, it was held liable to U-Trend.
Second, while "he who seeks equity must do equity" (Klaassen v Allegro Dev. Corp., 106 A3d 1035, 1046 [Del 2014] [internal quotation marks omitted]), the looting and mortgage damages were based on breach of contract (a legal claim), not just on breach of fiduciary duty (an equitable claim). As for estoppel, U-Trend did sometimes tell Aura not to remove nonparty Benzion Suky (the principal of 440); that is why the court limited the looting damages that U-Trend could recover against Aura. However, at other times, U-Trend implored Aura to remove Suky; hence, Aura cannot eliminate damages entirely on the basis of estoppel. As for mortgage damages, U-Trend never told Aura to let the mortgage go into default.
In its reply brief, Aura invokes in pari delicto. However, "[i]t is not every minor wrongdoing in the course of contract performance that will insulate the other party from liability" (McConnell v Commonwealth Pictures Corp., 7 NY2d 465, 471 [1960])[FN1]. U-Trend did not engage in "commercial bribery or similar conduct" (id.) or other activities forbidden by law (see In re LJM2 Co-Inv., L.P., 866 A2d 762, 775 [Del Ch 2004]).
Third, Aura contends that, under Delaware law, it cannot be liable for aiding and abetting 440/Suky's breaches of fiduciary duty because Aura itself is a fiduciary (see e.g. Gotham Partners, L.P. v Hallwood Realty Partners, L.P., 817 A2d 160, 172 [Del 2002]). While claims for breach of fiduciary duty are governed by Delaware law because Suite LLC is a Delaware entity (see e.g. Schroeder v Pinterest Inc., 133 AD3d 12, 22 [1st Dept 2015]), it is far from clear that Delaware law would govern claims for aiding and abetting breach of fiduciary duty (see Solow v Stone, 994 F Supp 173, 177 [SD NY 1998], affd 163 F3d 151 [2d Cir 1998]). Even though Suite LLC is a Delaware entity, it owned and operated property located in New York. To the extent Aura aided and abetted 440/Suky's breaches of fiduciary duty, it did so in Israel or New York, not Delaware.
Fourth, Aura contends that it was not the proximate cause of mortgage damages. If one starts at a later point, Aura's argument that it could not have refinanced the mortgage without 440's consent has merit (see e.g. Thorpe v CERBCO, Inc., 676 A2d 436, 444 [Del 1996]). However, if one starts at an earlier point, one could reason — as the trial court did — that if Aura had done its job, the mortgage would not have gone into default in the first place, so there would have been no need to refinance.
The court did not err by limiting Aura's liability for damages caused by Suky's looting to the period before October 2, 2012, as the record supports its conclusion that U-Trend at that time requested Aura to delay taking action against Suky.
Aura contends that, instead of awarding mortgage damages in the principal amount of $1,998,711.31 (representing the gross amount of 20% default interest), the court should have awarded the difference between the default rate and the non-default rate (i.e., net damages). Aura is correct.
If the theory underlying the mortgage damages is that Aura should have refinanced after the loan went into default, the mortgage damages cannot stand due to lack of proximate cause (because 440 had veto power over refinancing). The only way to uphold mortgage damages is on the theory that Aura breached its responsibility under the Founders' Agreement to manage Suite LLC; if it had managed Suite LLC properly, the loan would not have gone into default in the first place.
The purpose of contract damages is to put the non-breaching party in the position it would have been in if its counterparty had performed. If Aura had not breached the Founders' Agreement, Suite LLC would have paid interest at the regular rate of 6.5%, not the default rate of 20%. Thus, mortgage damages should represent interest at 13.5%, i.e., the difference between 20% and 6.5% (see generally Al-Ev Constr. Corp. v Ahern Maintenance & Supply Corp., 141 AD2d 591, 593 [2d Dept 1988]; WaveDivision Holdings, LLC v Millennium Digital Media Sys., L.L.C., 2010 WL 3706624, *20, 2010 Del Ch LEXIS 194, *66 [Sept. 17, 2010, C.A. No. 2993-VCS]).
U-Trend contends that the court should have awarded $4 million in sales damages against Aura and defendants (in the 2015 case) Yaacov Atrakchi, Michael Kleiner, and Yohai Abtan. This argument is unavailing, for multiple reasons.
First, due to Suite LLC's operating agreement, 440 had veto power over sales of the property at issue. In its complaint, U-Trend said 440 supported only a sale to the eventual buyer and objected to auctioning the property so that it could be sold to another buyer. "Facts admitted in a party's pleadings constitute formal judicial admissions, and are conclusive of the facts admitted in the action in which they are made" (Kimso Apts., LLC v Gandhi, 24 NY3d 403, 412 [2014] [internal quotation marks omitted]). In addition, in his direct testimony affidavit, U-Trend's principal said 440 refused to sell to any other buyer. A statement in an affidavit is an informal judicial admission (see People v Brown, 98 NY2d 226, 232 [2002]).
Second, each side presented expert testimony on the value of the property. The trial court, which heard and saw the witnesses, was in the best position to judge their credibility (see e.g. Frame v Maynard, 83 AD3d 599, 602 [1st Dept 2011]).
U-Trend relies on the fact that when Atrakchi's group bought Aura out of bankruptcy, it valued Aura's indirect 35% stake in the property at $4 million. However, in its complaint, U-Trend alleged, "whatever amount the Defendants paid to Aura's creditors in the bankruptcy — and whatever arbitrary value' they placed on the ... stock [of derivative plaintiff/nominal defendant Hospitality Suite International, S.A. (HSI), which indirectly owns 70% of Suite LLC] — has no bearing on what they are entitled to receive from a sale of the Property." Again, this constitutes a formal judicial admission (see e.g. Kimso, 24 NY3d at 412).
Third, Atrakchi, Kleiner, and Abtan are protected by the business judgment rule (see e.g. Asbestos Workers Phila. Pension Fund v Bell, 137 AD3d 680, 683 [1st Dept 2016]; McMullin v Beran, 765 A2d 910, 917, 920 [Del 2000]; In re Citigroup Inc. Shareholder Derivative Litig., 964 A2d 106, 125-126 [Del Ch 2009]).[FN2]
Aura contends that, if any damages are awarded, they should not go directly to U-Trend because all of its claims were derivative, not direct. This argument is unavailing (see e.g. NAF Holdings, LLC v Li & Fung [Trading] Ltd., 118 A3d 175, 176, 179-180, 182 [Del 2015]). U-Trend did not merely sue derivatively on behalf of HSI and Suite Corp.; it also sued in its own right for breach of the Founders' Agreement between itself and Aura.
Finally, U-Trend contends that the court improvidently exercised its discretion by failing to award attorneys' fees. This issue is governed by New York law (see Central Laborers' Pension Fund v Blankfein, 111 AD3d 40, 45 n 8 [1st Dept 2013]). Since the court awarded damages directly to U-Trend, it properly denied attorneys' fees (see Business Corporation Law § 626[e]). Moreover, U-Trend's lawsuits did not confer "material, lasting benefits to the company and its shareholders" (Gusinsky v Bailey, 66 AD3d 614, 615 [1st Dept 2009]). Suite [*2]LLC existed solely to own and operate the property; Suite Corp. existed solely to own Suite LLC; and HSI existed solely to own Suite Corp. Thus, the companies on whose behalf U-Trend sued (HSI and Suite Corp.) basically became defunct after the property was sold.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 21, 2020
CLERK



Footnotes

Footnote 1: Although the contract at issue (the Founders' Agreement) is governed by Israeli law, the parties cite only New York and Delaware law.

Footnote 2: The individual defendants were directors of HSI, a Luxembourg company; Abtan was also a director of double-derivative plaintiff/nominal defendant US Suite Corp. (Suite Corp.), a Delaware corporation. However, neither side cites Luxembourg law.