================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 197
Kimso Apartments, LLC, &c.,
et al.,
            Respondents,
        v.
Mahesh Gandhi,
            Appellant,
Arlington Filler, et al.,
            Respondents.




        Eli Feit, for appellant.
        Robert A. Spolzino, for respondents.








RIVERA, J.:

        Defendant/counterclaim plaintiff Mahesh Gandhi appeals

an order of the Appellate Division that modified Supreme Court's

judgment by denying Gandhi's application to amend his pleading to

assert a counterclaim for payments Gandhi alleges are due to him

- 1 -

under a settlement agreement.  We conclude, as a matter of law,
the Appellate Division abused its discretion in denying the
amendment, and reverse and remit.

I.

The underlying litigation in this appeal is based on
claims that have roots in a now dissolved real estate business
partnership between Gandhi, and his two associates, counterclaim
defendants Arlington Filler and Darshan Shah.  The individuals
formed and held equal one-third interests in three corporations,
Kimso Apartments, Inc., Poonam Apartments, Inc., and 185-225
Parkhill Corp.  The corporations purchased residential properties
in Staten Island, New York, consisting of multi-rental unit
apartment buildings which were regulated and subsidized as
affordable housing by the United States Department of Housing and
Urban Development (HUD).

The corporations secured a $20 million loan from HUD;
$11 million of which was allocated to rehabilitate and improve
the properties to maximize rentals under the federal Section 8
housing subsidy program.[1]  The remaining $9 million was loaned to
Gandhi, Filler and Shah as shareholder loans, evidenced by

---

[1]Section 8, or "the Housing Choice Voucher program", "is a
federally-funded program that provides rental assistance to
eligible low-income families to find affordable housing in the
private rental market" (see New York City Housing Authority,
Section 8 Assistance,
http://www.nyc.gov/html/nycha/html/section8/section8.shtml).

several promissory notes, of which Gandhi received $2,970,000
pursuant to the notes he signed and for which he made regular
interest payments.[2]

Over time, in 2001, Filler and Shah began to suspect
that Gandhi, who was the daily manager of the corporations, was
conspiring to overcharge for supplies and repairs.  As the
distrust towards Gandhi grew, Filler and Shah removed Gandhi as
manager.  Litigation among them and the corporations soon
followed.  In May 2002, Gandhi filed a petition in state court to
compel arbitration of disputes between them.  The following month
the corporations brought an action in federal court against
Gandhi for, inter alia, breach of fiduciary duty and conversion
based on his alleged theft from the corporations.  Gandhi then
filed a second state action for breach of contract, conversion,
and breach of fiduciary duty.

In August 2002, the parties executed a Settlement
Agreement to end the state and federal actions.  Pursuant to this
Settlement Agreement, Gandhi sold his one-third interest in the
corporations, along with other entities, to Filler and Shah for
$1,648,000, to be paid in 120 equal monthly installments of
$20,000, including interest.  As relevant here, the Agreement
contained a provision stating that the corporate and individual

---

[2]Under the payment structure for these shareholder loans,
the individuals' respective interest payments on the notes were
offset by the corporations' interest payments on loans from the
individuals to the corporations.

parties

> "agree to hereby release, acquit, and forever
> discharge each other . . . of and from any
> and all claims, known and unknown,
> counterclaims, actions, causes of action . .
> . whatsoever of any kind, from the beginning
> of time until the present that they now have
> or that may accrue that are the subject of
> the [parties'] lawsuits herein."

The Agreement, however, did not expressly state whether it extinguished Gandhi's shareholder loan obligation under the notes.

The corporate successors-in-interest to Kimso, Poonam and Parkhill, similarly named and now controlled solely by Filler and Shah, made 23 monthly payments to Gandhi, totaling $460,000. Although Gandhi ceased paying interest on the notes, initially, the corporations did not seek payments. Finally, in November 2003, the corporations declared the notes due and in default, and sent Gandhi a demand notice.

The corporations then filed this action, seeking declaratory judgment that the corporations have a common law right to offset the remaining amount they owed Gandhi under the Settlement Agreement against the money Gandhi owed the corporations on the shareholder loan notes.[3] The complaint expressly asserted that, "if Plaintiffs fail to make the full payments to Defendant [Gandhi] as specified under [the Settlement

---

[3]Plaintiffs Kimso, Poonam and Parkhill demanded to setoff $1,055,394.00, $1,120,926.00, and $1,027,000.00, respectively, with interest, for a total of $3,203,320.00.

Agreement], Plaintiffs would be in default of that agreement and Defendant Gandhi would be entitled to all its remedies in the Agreement."

Gandhi answered, seeking rescission of the Settlement Agreement and reinstatement as a shareholder in the corporations, and asserting various other counterclaims. He also named Filler and Shah as individual counterclaim defendants, along with several other corporate entities.[4]

Several months later, in September 2004, the corporations ceased making the monthly payments as required by the Settlement Agreement. Thereafter, the corporations' request for an offset against money they owed Gandhi, and Gandhi's counter demand for money owed based on the corporations' termination of payments, continued as the focus of the litigation, as reflected in the parties' amended pleadings and motion practice.

The corporations' amended complaint, repled their demand for declaratory judgment and specific payments based on the offset cause of action.[5] As before, the corporations asserted that they were entitled under their common law right to

---

[4]Gandhi's answer named as corporate counterclaim defendants Amity Park Associates, Drew Investment, Inc., Unithree Management, Inc., Unithree Investment Corp., Unithree Services Corp., and Eveready Security, Inc.

[5]Plaintiffs further sought return of money Gandhi allegedly misappropriated from the corporate entities named as counterclaim defendants in Gandhi's answer.

offset the amount they owed Gandhi pursuant to the Settlement Agreement against the amount he owed them under the notes.  They further stated they "are jointly and severally liable for the amounts due" Gandhi under the Settlement Agreement, and "if Plaintiffs fail to make the full payments to Defendant as specified under [sic] Settlement Agreement, Defendant may allege that Plaintiffs are in default of the Settlement Agreement and that Defendant would be entitled to all his remedies thereunder."

In response, Gandhi's amended answer asserted numerous counterclaims, and again sought rescission and corporate shareholder status reinstatement.  However, he did not assert a counterclaim for back payments under the Agreement.  Two years later, the court granted plaintiffs partial summary judgment, dismissing Gandhi's rescission claims.

The corporations subsequently moved and cross-moved for summary judgment on the declaratory judgment causes of action. Ghandi opposed and cross-moved for summary judgment, seeking dismissal of the declaratory judgment causes of action, and demanding judgment for him on his counterclaims, and "judgment in [his] favor for the amounts due from [the corporations] under the Settlement Agreement with interest and attorneys fees."  In his supporting affidavit, Gandhi asserted that "plaintiffs acknowledge that they entered into a settlement agreement with me . . ., and that they presently owe me in excess of $1 million (exclusive of accrued interest) under the terms of the settlement

agreement . . . "

Plaintiff Parkhill opposed Gandhi's cross motion, claiming that Gandhi failed to assert his demand for payments under the Settlement Agreement in his amended answer.  Gandhi responded that he was not required to "affirmatively plead this relief as a counterclaim" because, "[u]pon dismissal of [the corporations'] 'set-off' claims, it naturally follow[ed] that [he would be] entitled to immediately recover the undisputed monthly payments currently due and owing to him under the Settlement Agreement, with interest and attorneys fees."  In October 2009, Supreme Court denied the corporations' motions as premature and denied Gandhi's motion with leave to renew after discovery.

In October 2010, approximately a month before trial, respondents filed a motion in limine seeking to preclude Gandhi from presenting evidence of, or making a claim for, payments allegedly due to him under the Settlement Agreement.  Gandhi opposed, arguing he did not "assert an affirmative claim for past-due settlement payments" because "the payments have always been an acknowledged obligation of the [corporations]."  Gandhi further asserted that "it is well-settled that pursuant to CPLR 3025 (c), pleadings may be conformed to the proof at any time, *even during or after trial*" (emphasis in original).  The court denied the motion, reserving decision until the conclusion of trial.

At trial, the court permitted the introduction of

evidence regarding the Settlement Agreement and back payments allegedly owed to Gandhi.  Counsel for Plaintiff Parkhill questioned Gandhi about his negotiations with Filler and Shah concerning the buy-out provision in the Settlement Agreement. The corporations also successfully proffered the Settlement Agreement into evidence.  Gandhi testified as to the payments he was promised under the Settlement Agreement.

Before resting, Gandhi moved to conform the pleadings to the proof, seeking to assert a counterclaim for money currently owed him under the Settlement Agreement.  Plaintiff Poonam opposed, claiming prejudice based on Gandhi's delay in asserting the counterclaim, and asserting that Gandhi's claims were time barred.

Supreme Court granted Gandhi's motion to amend, and subsequently entered judgment in his favor on the counterclaim against the corporations for $2,186,787.  After finding that the Settlement Agreement encompassed a release of all claims, including the claims on the notes, Supreme Court reasoned that the payments due Gandhi under the Settlement Agreement,

> "although not plead [sic] by [Gandhi] in his
> counterclaims  has been an intrinsic
> counterclaim since the onset of this
> litigation.  [The corporations'] claim that
> they were entitled to withhold payments under
> the Settlement Agreement because they were
> entitled to payment under the Notes while
> [Gandhi] raised the opposite as his defense.
> The inverse of that argument would then state
> that if this Court does not find the
> Corporations are entitled to repayment under
> the Notes, the Settlement Agreement payments

must be due.  Based upon this logic, the
issue of the past due Settlement Agreement
payments was present in the litigation from
the very start, even though not specifically
pled, and thus amendment of the answer is not
prejudicial."

The court entered a sum-certain judgment because it was
undisputed that the corporations ceased making payments under the
Settlement Agreement in September 2004.  The court further denied
the corporations' request for a declaratory judgment, and denied
all remaining claims and counterclaims.

Plaintiffs appealed the grant of the amendment request,
and Gandhi cross appealed from the dismissal of his claim for
costs and legal fees.  The Appellate Division modified the
judgment on the facts, and in the exercise of its discretion
reversed Supreme Court's judgment on Gandhi's counterclaim.
(Kimso Apartments, LLC v Gandhi, 104 AD3d 742 [2d Dept 2013]).
The Appellate Division concluded Supreme Court should have denied
Gandhi's request as barred by the doctrine of laches based on his
extensive delay in seeking leave to amend.  It further concluded
that "the belated amendment" prejudiced the corporations by
denying them the opportunity to present their defenses to the
counterclaim.  We granted Gandhi leave to appeal (22 NY3d 854
[2013]) and now reverse.


                          II.

Under CPLR 3025, a party may amend a pleading "at any

time by leave of court" (CPLR 3025 [b]), "before or after judgment to conform [the pleading] to the evidence" (CPLR 3025 [c]).  A request to amend is determined in accordance with the general considerations applicable to such motion, including the statute's direction that leave "shall be freely given upon such terms as may be just" (CPLR 3025 [b]; see Murray v City of New York, 43 NY2d 400, 405-06 [1977]).  This favorable treatment applies "even if the amendment substantially alters the theory of recovery" (Dittmar Explosives, Inc. v A. E. Ottaviano, Inc., 20 NY2d 498, 502-03 [1967], citing CPLR 3025 [b], and 3 Weinstein-Korn-Miller, N.Y.Civ.Prac., pars. 3013.05, 3025.26, 3025.28).

This Court has in the past recognized that, absent prejudice, courts are free to permit amendment even after trial (Murray, 43 NY2d at 405 ["[w]here no prejudice is shown, the amendment may be allowed 'during or even after trial'"], citing Dittmar, 20 NY2d at 502, and Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3205:15, p 487).  Prejudice is more than "the mere exposure of the [party] to greater liability" (Loomis v Civetta Corinno Const. Corp., 54 NY2d 18, 23 [1981]).  Rather, "there must be some indication that the [party] has been hindered in the preparation of [the party's] case or has been prevented from taking some measure in support of [its] position" (id.).  The burden of establishing prejudice is on the party opposing the amendment (see Caceras v Zorbas, 74

NY2d 884, 885 [1989]; see also Siegel, N.Y. Prac. § 404 [5th
ed.]).

Applications to amend pleadings are within the sound
discretion of the court, and that of the Appellate Division
(Krichmar v Krichmar, 42 NY2d 858, 860 [1977]).  Courts are given
"considerable latitude in exercising their discretion, which may
be upset by us only for abuse as a matter of law" (Matter of Von
Bulow, 63 NY2d 221, 224 [1984]; see also Murray, 43 NY2d at 405
[courts considering motions to conform pleadings pursuant to CPLR
3025 are afforded "the widest possible latitude" in allowing such
an amendment]).  Nevertheless, we have found such an abuse of
discretion where the Appellate Division reversed a trial court's
grant of an amendment and the record established that the
opposing party suffered "no operative prejudice" as a result of
the mere omission to plead a defense (id.).

Here, we are compelled to conclude that the Appellate
Division abused its discretion because there was no prejudice to
the corporations that supports denial of Gandhi's request to
amend.  The corporations' action for declaratory judgment was
based on its claim of a common law right of set off, which they
asserted should be applied against the money they owed to Gandhi.
They stated expressly in their amended complaint that they were
"jointly and severally liable for the amounts due [Gandhi]" under
the Settlement Agreement, and if they failed to pay, they would
be in default of its terms.  As a general matter, statements in

the corporations' pleadings that they owed Gandhi the Settlement

money constitute formal judicial admissions (see Clason v

Baldwin, 152 NY 204 [1897]; see also GMS Batching, Inc. v TADCO

Const. Corp., 120 AD3d 549, 551 [2d Dept 2014] ["Facts admitted

in a party's pleadings constitute formal judicial admissions, and

are conclusive of the facts admitted in the action in which they

are made"]; Levy v Delaware, L. & W.R. Co., 211 AD 503, 505 [4th

Dept 1925] ["an admission in an original pleading is evidence of

the fact admitted"]; Prince, Richardson on Evidence § 8-215

[Farrell 11th ed 1995], at 523-524; Fisch on New York Evidence, §

803 [2d edition], at 474).  These assertions are "conclusive upon

the party making [them]" (id.), and the corporations did not seek

from the court to be relieved of the consequences of these

admissions (see Levy, 211 AD at 506; see also Prince, § 8-215 at

524; Fisch, § 803 at 474).

       Given that the corporations built the litigation

strategy for their declaratory judgment cause of action on the

fact of their admitted payment obligations to Gandhi, they may

not turnaround and seek to assert defenses to those admissions.

In other words, after arguing from the beginning of the lawsuit

that the entire sum of money they owed Gandhi should be reduced

by the money he owed them, they cannot now claim prejudice

resulting from Gandhi's demand for outstanding payments due him

under the Settlement Agreement.

       In addition to the corporations' admissions, they also

elicited evidence at trial that established the terms of the
Settlement Agreement and their payment obligations to Gandhi--the
very obligations that are the basis for Gandhi's counterclaim.
This Court found similar facts sufficient to overcome a claim of
prejudice in Murray (43 NY2d at 400).

In Murray, defendant City of New York failed to assert
as a defense that the plaintiff's exclusive remedy was under
workers' compensation and after the plaintiff rested, the City
sought to dismiss based on that defense.  The trial court granted
the City's motion to conform the pleadings to the proof and
dismissed the complaint.  The Appellate Division reversed,
finding "the trial court improvidently granted the city's motion
to conform the pleadings to the proof at the late stage at which
the workmen's compensation defense was first interposed" (43 NY2d
at 404).  This Court then reversed, concluding that the Appellate
Division abused its discretion because under the circumstances
there was no "operative prejudice" to the plaintiff where the
plaintiff had submitted evidence that was the basis for the
City's defense (id. at 405).  We further explained that "[w]hen a
variance develops between a pleading and proof admitted at the
instance or with the acquiescence of a party, such party cannot
later claim [] surprise[] or prejudice[] and the motion to
conform should be granted" (id., citing Donner v Baker, 11 AD2d
905 [4th Dept 1960], and Embien Properties v Emmadine Farms, 282
AD 1047 [2d Dept 1953], and Berkenstat v Oliver, 275 AD 679 [2d

Dept 1949], and Audley v Townsend, 126 AD 431, 434 [2d Dept 1908], and 6 Carmody-Wait 2d, NY Prac, § 34.44, p 127). Moreover, we found it was a common practice that "[u]nder such circumstances even appellate courts have taken it upon themselves upon review to amend the pleadings to conform to the proof" (Murray, 43 NY2d at 405, citing Pittsford Gravel Corp. v Zoning Bd. of Town of Perinton, 43 AD2d 811, 812 [4th Dept 1973], and Harbor Assoc., Inc. v Asheroff, 35 AD2d 667 [2d Dept 1970], and DiRosse v Wein, 24 AD2d 510, 511 [2d Dept 1965], and 3 Weinstein-Korn-Miller, NY Civ Prac, pars 3025.27, 3025.31).

The plaintiff corporations in the appeal before us presented evidence during the trial of the buy-out and the Settlement Agreement terms. Thus, as in Murray, the corporations submitted evidence which was the basis for defendant Gandhi's claim that he was entitled to payment for all outstanding payments under the Settlement Agreement. That the corporations objected to Gandhi's admission of evidence about the overdue payments does not affect our analysis because the corporations had to submit evidence of the payments owed to Gandhi -- i.e., the Settlement Agreement -- to succeed on their offset claim. Moreover, as Supreme Court stated, an adverse decision on their claim meant that they owed Gandhi.

While a delay in seeking to amend a pleading may be considered by the trial court, it does not bar that court from exercising its discretion in favor of permitting the amendment

where there is no prejudice (Dittmar, 20 NY2d at 503). The statute permitted Gandhi to request leave "before or after judgment to conform [the pleading] to the evidence" (CPLR 3025 [c]), and absent prejudice to the corporations the request should have been granted (see Murray, 43 NY2d at 405, citing Dittmar, 20 NY2d at 502).

Under the circumstances of this case, where the corporations admitted that they owed Gandhi the unpaid installments under the Settlement Agreement and the trial evidence established as much, there was no operative prejudice to the corporations in allowing Gandhi's amendment to assert the counterclaim for all outstanding payments. Therefore, the Appellate Division abused its discretion by reversing Supreme Court's grant of the application to amend.

III.

The order insofar as appealed from should be reversed, with costs, and the case remitted to the Appellate Division for consideration of issues raised but not determined on the appeal to that court.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order, insofar as appealed from, reversed, with costs, and case remitted to the Appellate Division, Second Department, for consideration of issues raised but not determined on the appeal to that court.  Opinion by Judge Rivera.  Chief Judge Lippman and Judges Graffeo, Read, Smith, Pigott and Abdus-Salaam concur.

Decided November 25, 2014