Metropolitan Lofts of NY, LLC v Metroeb Realty 1, LLC (2018 NY Slip Op 02319)





Metropolitan Lofts of NY, LLC v Metroeb Realty 1, LLC


2018 NY Slip Op 02319


Decided on April 4, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 4, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
RUTH C. BALKIN
FRANCESCA E. CONNOLLY
LINDA CHRISTOPHER, JJ.


2014-05885
 (Index No. 503441/12)

[*1]Metropolitan Lofts of NY, LLC, appellant, 
v
Metroeb Realty 1, LLC, et al., respondents.


Kaplan Kravet & Vogel, P.C. (Mischel & Horn, P.C., New York, NY [Scott T. Horn], of counsel), for appellant.
Cohen Tauber Spievack & Wagner, P.C., New York, NY (Kenneth J. Rubinstein of counsel), for respondent Metroeb Realty 1, LLC.
Lupkin & Associates PLLC, New York, NY (Jonathan D. Lupkin of counsel), for respondent RedSky Capital, LLC.



DECISION & ORDER
In an action to recover damages for breach of contract, for specific performance of a contract for the sale of real property, and for declaratory relief, the plaintiff appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Kings County (Lawrence Knipel, J.), dated June 6, 2014, as, upon a decision of the same court (Ann T. Pfau, J.), dated May 6, 2014, made after a nonjury trial, dismissed the complaint and declared that a contract executed on May 4, 2012, between the plaintiff and the defendant Metroeb Realty 1, LLC, for the sale of the subject real property is not valid and enforceable.
ORDERED that the judgment is reversed insofar as appealed from, on the law, on the facts, and in the exercise of discretion, with one bill of costs, the complaint is reinstated, and the matter is remitted to the Supreme Court, Kings County, for further proceedings to determine what remedy is available to the plaintiff, and thereafter, for the entry of an amended judgment, inter alia, declaring that the contract executed on May 4, 2012, between the plaintiff and the defendant Metroeb Realty 1, LLC, for the sale of the subject real property is valid and enforceable.
On October 22, 2012, the plaintiff commenced this action against the defendant Metroeb Realty 1, LLC (hereinafter Metroeb). The plaintiff sought to recover damages for breach of contract, specific performance of a contract for the sale of real property, and declaratory relief. The plaintiff alleged that on May 4, 2012, the parties entered into a contract in which Metroeb agreed to sell the subject property to the plaintiff for the sum of $30 million, but that Metroeb thereafter entered into a contract to sell the property to a different purchaser. Metroeb counterclaimed for a declaration that the purported contract was not valid and enforceable. RedSky Capital, LLC (hereinafter RedSky), which entered into the subsequent contract to purchase the property, intervened in the action as a defendant, asserting, inter alia, a counterclaim against the plaintiff for a declaration that the plaintiff's purported contract with Metroeb is not valid and enforceable. The action proceeded to a nonjury trial.
The evidence at trial established that on May 3, 2012, following various negotiations regarding the sale of the property, Sam Sprei, acting as agent of the plaintiff, presented a contract of sale for the purchase of the property to Metroeb's principal, Aaron Berger. The contract bore the indicia of a formal contract for the sale of real property in that it was, inter alia, 22 pages long and annexed numerous schedules, including the metes and bounds description for the property, an agreement for the assignment of leases and security deposits for existing tenants, and a survey of the property. Additionally, the contract was signed by the plaintiff's principal, Isaac Jacobowitz, on behalf of the plaintiff. Sprei also gave Berger two down payment checks from the plaintiff totaling $3 million, the required down payment under the terms of the contract. Berger retained the checks, but never presented them for payment. On May 4, 2012, Sprei and Berger met at Berger's office and negotiated and made numerous handwritten changes to the contract. Each change was initialed by Berger and Sprei. Further, each page of the contract was initialed at the bottom by Berger and Sprei, and Berger signed the contract on the signature line as president of Metroeb.
The contract provided that the closing would take place on July 9, 2013, with time being of the essence. Berger testified that it was his understanding that the contract would be sent to an attorney to be put in "proper form," and then signed. On May 7, 2012, a copy of a $3 million certified check intended to replace the two prior checks was emailed to Berger. However, this check was never delivered to Berger and was later redeposited by Jacobowitz into his account. After the signing of the contract, Jacobowitz and Berger continued to negotiate aspects of the sale, but the parties never agreed to the changes or signed a new contract.
On May 8, 2012, four days after signing the contract to sell the property to the plaintiff, Berger received an offer from RedSky to purchase the property for $32 million. On July 20, 2012, Metroeb and RedSky entered into a contract of sale for the property with a purchase price of $32.5 million. Notably, after the contract with RedSky was signed, Berger continued to negotiate and meet with Jacobowitz, to whom he sent copies of leases and plans for the building on May 17, 2012. During this period of time, the plaintiff arranged for $20 million in financing through a lender. Jacobowitz testified that the balance of the purchase price would be funded through the plaintiff's cash holdings.
On August 20, 2012, Berger tendered to the plaintiff a proposed agreement for the "Termination of Contract of Sale," dated July 26, 2012, which the plaintiff did not sign. On August 20, 2012, Berger contacted Chase Bank and was informed that the plaintiff's down payment checks were "not good at present." By letter dated August 21, 2012, Metroeb informed the plaintiff that it was cancelling the contract because the account on which the checks were drawn did not contain sufficient funds. Jacobowitz testified that the funds had been moved from that checking account to an interest-bearing account, and that sufficient funds would be transferred to the account to cover the checks when they were presented for payment. Jacobowitz testified that as of "the intended closing date under the contract," the plaintiff had the funds to close and was ready, willing, and able to perform.
In a decision after trial dated May 6, 2014, the Supreme Court determined that the plaintiff and Metroeb had not come to a meeting of the minds on May 4, 2012, which the court found was evidenced by Berger and Jacobowitz's continuing negotiations after that date. Accordingly, by judgment dated June 6, 2014, the Supreme Court, inter alia, dismissed the complaint and declared that the May 4, 2012, contract between the plaintiff and Metroeb was not valid and enforceable. Further, the judgment directed that Metroeb shall convey the property to RedSky within 90 days. The plaintiff appeals from stated portions of the judgment, and we reverse the judgment insofar as appealed from.
"In reviewing a determination rendered after a nonjury trial, the power of this Court is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing the witnesses and hearing the testimony" (Palombo Group v Poughkeepsie City Sch. Dist., 125 AD3d 620, 621 [internal quotation marks omitted]; see Northern Westchester Professional Park Assoc. v Town of [*2]Bedford, 60 NY2d 492, 499).
Contrary to the Supreme Court's determination, a complete and enforceable contract was formed on May 4, 2012, when Berger executed the contract of sale agreeing to sell the property to the plaintiff. "[C]ourts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract" (Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp., 93 NY2d 584, 589). Although Berger testified that he expected that a final contract would be signed after it had been put in "proper form" by an attorney, "the existence of a binding contract is not dependent on the subjective intent of [the parties]" (Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 399). "In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look, rather, to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds" (id. at 399). Notably, the May 4, 2012, contract contains all of the essential terms of a contract for the sale of real property, designated the parties, and identified and described the subject matter of the contract (see Piller v Marsam Realty 13th Ave., LLC, 136 AD3d 773, 774). The contract was signed by Berger and Jacobowitz, and all changes to the contract were initialed by Sprei, who was acting as agent for the plaintiff, and Berger. Moreover, the contract contained no provision indicating that an additional signed agreement would be necessary to create a binding agreement (see 1-2 Corbin on Contracts § 2.9 [2017]; cf. Durable, Inc. v Twin County Grocers Corp., 839 F Supp 257, 260 [SD NY]) and, even where the parties "anticipat[e] that a more formal contract will be executed later, the contract is enforceable if it embodies all the essential terms of the agreement" (Wronka v GEM Community Mgt., 49 AD3d 869, 871; see Maccioni v Guzman, 145 AD2d 415, 416).
Metroeb's contention, in the alternative, that the plaintiff breached the contract because there were insufficient funds in the plaintiff's account to cover the down payment checks on August 20, 2012, is without merit. The contract provided Metroeb with the option to cancel the contract if the down payment checks "shall fail of collection in due course." However, it was undisputed that Metroeb never presented the checks for payment and, thus, the option to terminate under this provision was not triggered (see Hackal v Adler, 234 AD2d 341, 342).
The Supreme Court improvidently exercised its discretion in denying the plaintiff's motion to conform its complaint to the proof at trial (see CPLR 3025[c]). "[A]bsent prejudice, courts are free to permit amendment even after trial" (Kimso Apts., LLC v Gandhi, 24 NY3d 403, 411). "The burden of establishing prejudice is on the party opposing the amendment" (id. at 411). "Prejudice, of course, is not found in the mere exposure of the defendant to greater liability. Instead, there must be some indication that the defendant has been hindered in the preparation of his case or has been prevented from taking some measure in support of his position" (Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 23; see Kimso Apts., LLC v Gandhi, 24 NY3d at 411). Here, in opposition to the plaintiff's motion, the defendants failed to show that the amendment would hinder the preparation of their cases or prevent them from taking some measure in support of their positions at trial and, therefore, the plaintiff's motion to conform its complaint to the proof should have been granted.
Finally, RedSky argues on appeal that this Court may not grant specific performance to the plaintiff because, after judgment was entered, the property was transferred to it as a good faith purchaser for value (see e.g. Da Silva v Musso, 76 NY2d 436). However, this issue is raised for the first time on appeal, involves matter dehors the record, and is not brought up for review by the plaintiff's appeal from the judgment (see CPLR 5501[a]).
Since the Supreme Court did not reach the issue of the appropriate remedy for the plaintiff, we remit the matter to the Supreme Court, Kings County, for further proceedings to determine what remedy is available to the plaintiff.
MASTRO, J.P., BALKIN, CONNOLLY and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court