Fairmont 88 LLC v Fang Yu (2025 NY Slip Op 25043)

[*1]

Fairmont 88 LLC v Fang Yu

2025 NY Slip Op 25043

Decided on February 21, 2025

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 21, 2025
Civil Court of the City of New York, Queens County

Fairmont 88 LLC, Petitioner,

against
Fang Yu, Respondent.

Index No. L&T 303757-24

Counsel for Petitioner:
Horing Welikson Rosen & Digrugilliers, P.C.
Counsel for Respondent:
The Legal Aid Society

Logan J. Schiff, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of Respondent's motion to interpose an amended answer and upon amendment to dismiss or for a traverse hearing (mot. seq. 3): NYSCEF 6-20.
The court's decision and order on Respondent's motion is as follows:
PROCEDURAL HISTORY AND BACKGROUND
Petitioner filed this nonpayment proceeding on March 5, 2024, seeking possession based on Respondent Fang Yu's default in payment of $5,290.44 in rent due under the parties' rental agreement. Respondent interposed a pro se answer on an English pre-printed form on March 12, 2024, raising a general denial and a warranty of habitability affirmative defense.
At the first court appearance on May 8, 2024, the matter was adjourned to July 2, 2024, for Respondent to complete an intake with the Legal Aid Society (LAS) through the Universal Access to Counsel Program. The court file indicates that Respondent requested a Mandarin interpreter. On July 2, 2024, LAS filed a notice of appearance, and the parties agreed to a briefing schedule for the filing of a pre-answer dispositive motion prior to the next court appearance on August 20, 2024. On August 1, 2024, LAS timely filed the instant motion seeking leave to interpose an amended answer asserting several new defenses, including a lack of personal jurisdiction, and, upon amendment, seeking a traverse hearing or dismissal of the Petition. The proceeding was adjourned several times, on consent, for settlement purposes, and the motion was ultimately argued on December 6, 2024. After the argument, the court issued a NYSCEF notice advising Petitioner that it would consider Respondent's proposed amended [*2]answer (NYSCEF 18), inadvertently omitted as an exhibit from Respondent's initial motion, and inviting Petitioner to submit a sur-reply, if any, on or before January 18, 2025, which Petitioner declined to do.
DISCUSSION
A. Respondent's Motion to Interpose an Amended Answer
The first branch of Respondent's motion seeks leave to interpose an amended answer asserting a personal jurisdiction defense, a challenge to the service and sufficiency of the predicate rent demand, and a rent overcharge defense premised on Petitioner's failure to register the apartment's rent-stabilized rent with the Division of Housing & Community Renewal. The proposed answer also seeks to amplify Respondent's warranty of habitability defense and to assert it as a counterclaim as to rents paid prior to the period sought in the Petition. Petitioner opposes the motion in all respects but most fervently with respect to Respondent's proposed personal jurisdiction defense, which Petitioner argues was waived by virtue of Respondent's failure to challenge service of process in her original pro se answer.
The standard for amendment of an answer is well known. "In the absence of prejudice or surprise resulting directly from the delay in seeking leave, applications to amend or supplement a pleading are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit" (Citimortgage, Inc. v Rogers, 203 AD3d 1125 [2d Dept 2022] [internal citations and quotations omitted]); Alsaidi v Alsaede, 227 AD3d 643 [2d Dept 2024]). "Mere lateness is not a barrier to amendment" and generally must rise to the level of "lateness coupled with significant prejudice to the other side, the very elements of the laches doctrine" (Shields v Darpoh, 207 AD3d 586 [2d Dept 2022]). "The burden of establishing prejudice is on the party opposing the amendment" (Kimso Apts. LLC v Gandhi, 24 NY3d 403, 411 [2014]). "[P]rejudice must be 'traceable not simply to the new matter sought to be added, but also to the fact that it is only now being added. There must be some special right lost in the interim, some change of position or some significant trouble or expense that could have been avoided had the original pleading contained what the amended one wants to add'" (Four Thirty Realty LLC v Kamal, 83 Misc 3d 138 [App Term, 1st Dept 2024], quoting A.J. Pegno Constr. Corp. v. City of New York, 95 AD2d 655, 656 [1983]).
In opposing Respondent's motion to interpose an amended answer, Petitioner fails to articulate, and the court cannot discern, any prejudice to allowing amendment at this pre-trial juncture, particularly when considering that Respondent promptly moved to amend following the retention of counsel (see Hill Plaza Enters. NY, LLC v Terris, 82 Misc 3d 132 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2024]; Four Thirty Realty LLC v Kamal, 83 Misc 3d 138 [App Term, 1st Dept 2024]). Nor does the court find any portion of the proposed amended answer to be facially defective or otherwise palpably lacking in merit. The proposed defenses and counterclaim are all cognizable defenses to a summary nonpayment and are sufficiently pled so as to place Petitioner on notice as to the nature of the claims and defenses, particularly insofar as CPLR 3026 provides that "[p]leadings shall be liberally construed" prior to a factual determination on the merits (see also Soufer Family LLC v Sprague, 80 Misc 3d 130 [App Term, 1st Dept 2023]; Leon v Martinez, 84 NY2d 83 [1994]).
Petitioner's most serious objection concerns Respondent's assertion in the proposed amended answer that Petitioner failed to properly serve the initiating papers. As Petitioner correctly notes, the legislature has provided that a personal jurisdiction defense is waived when not raised in an initial responsive pleading (see CPLR 3211(e)) or within the time frame to [*3]amend an answer as of right (see Iacovangelo v Shepherd, 4 NYD3d 184 [2005]; CPLR 3025(a)). In the First Department, such a waiver is irrevocable insofar as the Appellate Division has reasoned that "the waiver of a jurisdictional defense cannot be nullified by a subsequent amendment to a pleading adding the missing affirmative defense" (McGowan v Hoffmeister, 15 AD3d 297 [1st Dept 2005]); see also Crotona Ave. Assoc. L.P. v Lynch, 78 Misc 3d 1205 [Civ Ct, Bronx Co 2023] [holding that the Hoffmeister precedent is binding on housing court proceedings in the First Department]; cf. 1163 Washington LLC v Cruz, 75 Misc 3d 1237 [Civ Ct, Bronx Co 2022]). However, in the Second Department, where this court sits, the Appellate Division has recently concluded that a waived personal jurisdiction defense may be revived by amendment upon leave of court, even after the period for amendment as of right has expired. In Deutsche Bank Natl. Trust Co. v Groder, 218 AD3d 542 [2d Dept 2023], the Appellate Division held that "[a]lthough the defendant did not assert lack of personal jurisdiction in her answer and thereby waived this defense under CPLR 3211 (e), such a defense can nevertheless be interposed in an answer amended by leave of court pursuant to CPLR 3025 (b)" (id. at 545; see also Deutsche Bank Trust Co. Ams. v Cox, 110 AD3d 760, 762 [2d Dept 2013]; Crosby v Crosby, 177 AD3d 1143 [3d Dept 2019] cf. GMAC Mortgage, LLC v Coombs, 191 AD3d 37 [2d Dept 2020] [citing favorably to Hoffmeister in dicta]; Bernardo v County of Nassau, 150 AD2d 320 [2d Dept 1989]). While Groder involved a foreclosure action commenced in Supreme Court, there is nothing in the holding's reasoning that would limit it to such matters. This recent Appellate Division precedent is therefore binding on all trial courts within the Second Department unless and until the Second Department or Court of Appeals holds otherwise (see Mountain View Coach Lines, Inc. v Storms, 102 AD2d 663, 664 [2d Dept 1984]).
Because Respondent did not irretrievably waive her proposed personal jurisdiction defense by virtue of her initial answer, the decision whether to allow amendment to revive this the defense remains within "the sound discretion of the trial court" (Hill Plaza Enters. NY, LLC v Terris, 82 Misc 3d 132[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2024]); LCVAWCP-Doe v Collins, 218 AD3d 557 [2d Dept 2023]). In exercising such discretion, the Appellate Division's decision in Groder provides scant guidance beyond reciting the general standard for amendment of pleadings (i.e. prejudice and facially sufficiency) and noting that "mere lateness is not a barrier to the amendment" (Groder at 545 [internal citations and quotations omitted]). This court presumes, however, that the analysis is not identical to the standard for a motion to amend an answer to assert a defense that was not otherwise waived, as this would effectively nullify the language in the waiver provision of CPLR 3211(e) and contravene the well-established principle of statutory interpretation that "meaning and effect should be given to every word of a statute and an interpretation that renders words or clauses superfluous should be rejected" (Matter of Mestecky v City of New York, 30 NY3d 239, 243 [2017] [internal quotations and citations omitted]).
In the absence of clarity from the appellate courts, factors this court finds relevant to whether a waived personal jurisdiction defense may be revived, beyond general considerations of prejudice and the facial sufficiency of the proposed defense, include whether the respondent knowingly consented to the jurisdiction of the court by virtue of her initial answer, "how long the party seeking the amendment was aware of the facts upon which the motion was predicated [and] whether a reasonable excuse for the delay was offered" (Christina Trust v Corbin, 219 AD3d 686, 689 [2d Dept 2023]), and whether the defense has been permanently waived by virtue of other conduct during the course of the litigation. Where a party files a dispositive [*4]motion that does not challenge personal jurisdiction, they have "irretrievably waived" the defense insofar as personal jurisdiction is a threshold matter and seeking other substantive relief before resolving jurisdiction "wast[es]..the court's time." (GMAC Mortgage, LLC v Coombs, 191 AD3d 37 [2d Dept 2020]; In the Matter of Smith v Murphy, 161 AD3d 1174 [2d Dept 2018]). A similar result occurs where a party participates in a proceeding for a significant period without challenging personal jurisdiction (see Wells Fargo Bank, N.A. v Hosseinipour, 2025 NY Slip Op 00697 [2d Dept 2025]), or raises unrelated counterclaims (see Halberstam v Kramer, 39 Misc 3d 126 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013]). A waiver by participation may occur even in the absence of a formal notice of appearance where the parties' conduct, particularly through counsel, evinces an intent to consent to the court's jurisdiction (see HSBC Bank USA, N.A. v Whitelock, 214 AD3d 855 [2d Dept 2023]; HSBC Bank USA N.A. v Mohammed, 209 AD3d 846]; cf. Kralik v Marai, 216 AD3d 490 [1st Dept 2023]).
In the present matter, apart from her initial pro se answer, Respondent has not otherwise demonstrated an intent to consent to this court's jurisdiction. Upon retaining counsel on the second appearance, Respondent's counsel immediately advised the court and her adversary of her intent to file a dispositive motion challenging personal jurisdiction and did so prior to the next adjourn date pursuant to a briefing schedule agreed to by the parties.
Nor does the court find that Respondent knowingly consented to the court's jurisdiction when she failed to challenge service of process in her initial answer. In support of her motion, Respondent states in her sworn affirmation that she primarily speaks Mandarin, yet she completed her answer on a pre-printed form in English and was unaware of her potential defenses, including relating to personal jurisdiction, when she answered, only learning of them after obtaining counsel (see NYSCEF 7). The court finds these assertions to be credible and typical in housing court proceedings. Unlike an attorney, who is expected to "know the law relating to the matter for which he/she is representing a client" (see Wo Yee Hing Realty Corp v Stern, 99 AD3d 58 [1st Dept 2012] [internal quotation and citation omitted]), and whose failure to raise a personal jurisdiction defense in a responsive pleading should therefore generally constitute a permanent consent to the jurisdiction of the court, pro se litigants are rarely aware of such legal technicalities. Moreover, as Judge Lutwak persuasively notes in 1163 Washington LLC v Cruz, 75 Misc 3d 1237 [Civ Ct, Bronx Co 2022]), given the uniquely contracted nature of summary nonpayment proceedings, the high stakes of eviction, the regular use of pre-printed forms in English only without the aid of interpreters, and the practical inability of the litigants to retain counsel before answering, in the absence of evidence of prejudice allowing amendment within a reasonable time frame to allow for assertion of a personal jurisdiction defense best serves the interests of the administration of justice (id. at *14).
There is perhaps no civil proceeding in New York where rights of such consequence have the potential to be adjudicated with so little effort or proof as a summary nonpayment proceeding under RPAPL 711(2).[FN1]
Created by statute and normally heard within the specialized forum of [*5]housing court, Article 7 nonpayment proceedings "represent[] the Legislature's attempt to balance the rights of landlords and tenants to provide for expeditious and fair procedures for the determination of disputes involving the possession of real property" (Brusco v Braun, 84 NY2d 674, 681 [1994]).
In its effort to achieve the desired expediency, the legislature has fashioned several procedures that effectively compel tenants to hurriedly answer, usually before they have any prospect of retaining counsel, or risk losing their homes, beginning with the acquisition of personal jurisdiction. In plenary actions in civil or supreme court seeking redress for even modest financial disputes over the small claims jurisdictional limit of $10,000, a plaintiff must exercise "due diligence" before resorting to affix and mail service (see CPLR 308(4); CCA 403). This generally requires at least three attempts over multiple days and genuine inquiries into the whereabouts and residence of the defendant (see Niebling v Pioreck, 222 AD3d 873 [2d Dept 2023]; Estate of Waterman v Jones, 46 AD3d 63 [2d Dept 2007]). Yet, in housing court, where the stakes for both sides are often considerably higher, the initiating papers can be affixed to the tenant's door and sent by mail if, after "reasonable application," the petitioner has been unable to locate the respondent or another person or suitable age and discretion willing to accept service at the premises (see RPAPL 735). The appellate courts have made clear that a reasonable application only requires two attempts at the premises, in some cases, occurring within a 12-hour period (see, e.g., Palmer House Owners Cor. v Duchesneau, 64 Misc 3d 146 [App Term, 2d Dept, 9th & 10th Jud Dists 2019]; 809-811 Kings Highway, LLC v Pules Laser Skin Care, 25 Misc 3d 130 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009]).
Thus, a tenant traveling or hospitalized for as little as one day could return home to find eviction papers posted on their door and in the mailbox (assuming they were firmly affixed, and the mailbox is functioning). At this point, the tenant would have an extremely contracted time to answer, possibly only a few days depending on when they returned, because, as with service, the deadline for answering is far more accelerated than in other civil proceedings. In plenary actions, conspicuous place service affords the defendant at least 40 days to answer from service, a reasonable period to retain counsel and research and prepare defenses (see CPLR 3012(c); CPLR 308(2) [service is complete ten days after the filing of proof of service]) Once the answer is filed, the defendant has the option of interposing an amended answer as of right, within ten days in Civil Court (see CCA 909(a)) and twenty in Supreme Court (see CPLR 3025), which would allow for the interposition of otherwise waived defenses, including a personal jurisdiction defense (see Iacovangelo v Shepherd, 5 NY3d 184 [2005]). In summary nonpayment proceedings, there is no right to amend an answer without leave of court (see Smith v Maya, 1999 NY Misc LEXIS 717 [App Term, 2d Dept, 2d & 11th Jud Dists 1999]), and the time frame for answering is far more expedited. If the tenant does not answer within 10 days of service "the judge shall render judgment in favor of petitioner ." (RPAPL 732(2)). No motion is required for entry of a default judgment, and the court reviewing a petitioner's application for a default must enter a judgment so long as the petitioner affirms to the truth of facially sufficient papers, without any ability to test the validity of the allegations via an inquest hearing or by requiring a motion, regardless of how little rent may be owed or other factors (see Brusco v Braun, 84 NY2d 674 [1994]). In other words, the failure to immediately answer a nonpayment petition will [*6]normally result in the automatic entry of a judgment.
The seriousness of RPAPL 732(2)'s mandate to enter judgment on default is appropriately reflected in the language on the standardized nonpayment notice of petition form served with the petition, which states as follows: "Warning! If you don't answer the Petition within 10 days, a judgment may be entered against you. If that happens, the landlord will have the right to evict you." (see NYSCEF 2) The notice of petition also provides a list of phone numbers that tenants can call to potentially access free counsel through the New York City's Universal Access to Counsel Program (UAC), created by a local law enacted in 2017 by the New York City Council in recognition of the gravity of housing court proceedings and the need to afford litigants without resources the ability to retain counsel (see 2247 Webster Ave. HDFC v Galarce, 62 Misc 3d 1036 [Civ Ct, Bronx Co 2019] citing Administrative Code of City of New York § 26-1302(a)(2)). However, the reality of this program, still struggling to achieve its lofty goal of full representation for all low-income tenants, years after a planned deadline of 2021, is that the odds of a pro se litigant obtaining counsel or even advice in the ten days after service of a petition and before the deadline to answer is virtually non-existent. Instead, the free legal services providers, working in coordination with the Office of Civil Justice, the division with the City's Human Resources Administration administering UAC, and the court system, via the Office of Court Administration, have structured the program to provide intake appointments on the first assigned court date following an answer or other motion, well after the time to answer has expired.
Given the pressures placed on tenants to quickly answer to avoid a default, and the near impossibility of retaining or consulting with counsel prior to answering, it is entirely predictable that many pro se answers in a nonpayment proceedings often contain barebones general denials that fail to articulate the range of defenses the respondents may have.[FN2]
While anyone familiar with housing court would likely concede this point, it is also confirmed anecdotally on a nearly daily basis in the undersigned's courtroom during court conferences and allocutions of settlement agreements with pro se litigants, in which the housing court is required to review the tenant's potential defenses (see RPAPL 746). For instance, it is commonplace to encounter tenants who immediately volunteer that they were not served and only learned of the appearance from a court postcard, or that they may have other defenses, such as a breach of warranty of habitability defense due to unabated health and safety conditions in their apartment.[FN3]
In rarer cases, respondents will offer facts that, if established, could constitute a complete defense to the proceeding, for instance a tenant sued for rent that came due when they were displaced because [*7]of a fire or flood. Yet, time and again, these defenses are nowhere reflected in the respondents' pro se answers, notwithstanding the array of check boxes listing potential defenses on the sample pro se answer form.[FN4]
It is also common to see oral and written answers completed in English for tenants who plainly require the services of an interpreter, with no indication whether an interpreter was made available.[FN5]

It is therefore unsurprising and entirely credible that the Respondent here alleges in her motion that she was confused and unsure of her potential defenses when she answered the Petition without counsel, an answer that was completed on a form in English despite Respondent's limited proficiency in the language. This experience is more the norm than the exception in present day housing court.
If the purpose of RPAPL 732 is truly to ensure "fair procedures for the determination of disputes involving the possession of real property" (Brusco v Braun, 84 NY2d at 681 [1994]), this can only be accomplished within the existing statutory framework by treating pro se answers in nonpayment proceedings as mere placeholders, to be freely amended after an opportunity to consult with counsel or a conference with the court, without the waiver of any important rights or defenses, including the defense of lack of personal jurisdiction.[FN6]
Accordingly, the court finds that Respondent did not waive a personal jurisdiction defense by virtue of her pro se answer. In the absence of any prejudice or other conduct that would constitute an irrevocable consent to the jurisdiction of this court, Respondent's motion to interpose an amended answer is granted, and the proposed answer is deemed timely filed and served in its entirety.
B. Respondent's Motion to Dismiss or for a Traverse Hearing
Upon amendment of her answer, Respondent seeks a traverse hearing or dismissal of the proceeding on several grounds, including lack of personal jurisdiction. She alleges in her proposed answer and sworn affirmation in support of her motion that she was not properly served with the Petition, claiming that, on the day of the first attempt at service, she clearly recalls being at the Apple store in the Queens Center Mall repairing her phone, returning home at 5:30pm, and not leaving her home the rest of the evening, and not hearing any knock on her door at 7pm as alleged, which she claims she would have heard given how small her apartment is and the lack of noise. Respondent further avers that, on the following day, when the Petition was allegedly affixed to her door at 11am, she was sitting at home undisturbed and once again did not hear any knock on the door before the process server resorted to conspicuous place service, and that she has no hearing impairments or other reason why she would not have heard the door that day.
A process server's affidavit of service "constitute[s] prima facie evidence of proper service" of process (Carver Fed. Sav. Bank v Supplice, 109 AD3d 572, 572 [2d Dept 2013]; see also Wilmington Sav. Fund Socy. FSB v Zabrowsky, 212 AD3d 866, 869-870 [2d Dept 2023]; U.S. Bank N.A. v Nakash, 195 AD3d 651 [2d Dept 2021]; Rox Riv 83 Partners v. Ettinger, 276 AD2d 782, 783 [2d Dept 2000]). "Bare and unsubstantiated denials of receipt of [the initiating papers] are insufficient to rebut the presumption of service" (115 Essex St. LLC v Tenth Ward, LLC, 2024 NY Slip Op 02290 [2d Dept 2024]). "However, a sworn denial of service containing specific facts generally rebuts the presumption of proper service established by the process server's affidavit, and necessitates an evidentiary hearing" (id., quoting Deutsche Bank Natl. Trust Co. v DaCosta, 97 AD3d 630, 631 [2d Dept 2012]. "The sworn denial of receipt of service must be a detailed and specific contradiction of the allegations in the process server's affidavit" (Wells Fargo Bank, N.A. v Enitan, 200 AD3d at 738 [internal quotation marks omitted]).
Here, Respondent's specific sworn statement contesting the veracity of the assertions in the process server's affidavit of service, namely that he knocked on the door on the days she states she was home, is sufficient to warrant a traverse hearing for purposes of determining if the server exercised reasonable application before resorting to conspicuous place service (see Sinay v Schwartzman, 148 AD3d 1068 [2d Dept 2017]; Albany Law Sch. v Young, 39 Misc 3d 148 [App Term, 2d Dept, 9th & 10th Jud Dists 2013]; Tzifil Realty Corp. v Temammee, 46 Misc 3d 144 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2023]; Velez v Forcelli, 125 AD3d 643 [2d Dept 2016]; Sileo v Victor, 104 AD3d 669 [2d Dept 2013]). Accordingly, Respondent's motion is granted, and the matter is adjourned to March 26, 2025, for a traverse hearing at 2:30pm.
The remaining branches of Respondent's motion are held in abeyance pending the result of the hearing as personal jurisdiction is a threshold issue that must be resolved before any other request for relief on the merits (see 115 Essex St., LLC v Tenth Ward, LLC, 2024 NY Slip Op 02290 [2d Dept 2024]; Elm Mgt. Corp. v Sprung, 33AD3d 753 [2d Dept 2006]).
CONCLUSION
For the foregoing reasons, Respondent's motion is granted to the extent of deeming the proposed amended answer (NYSCEF 18) filed and served, and further granted to the extent of setting the matter down for a traverse hearing on March 26, 2025, at 2:30pm, with the remaining branches of the motion to dismiss held in abeyance pending the outcome of the hearing.
This is the decision and order of the court.
Dated: February 21, 2025
Queens, New York
HON. LOGAN J. SCHIFF, J.H.C.

Footnotes

Footnote 1:While the catalyst of these proceedings is the failure to pay rent, a matter of breach of contract, the remedies and rights involved are far more consequential than a mere financial accounting. At stake is the landlord's ability to use and enjoy their property, and the tenant's right to remain in their residence, often their sole source of shelter. If the landlord prevails, a warrant of eviction issues, permitting them to remove the tenant from their home, forcibly, if necessary, via a city marshal or sheriff.

Footnote 2:This is not to say that all Respondents have material defenses to nonpayment proceedings. Many nonpayment cases in housing court are rooted entirely in the tenant's financial hardship and simply require the time and means to access increasingly sparse public benefits programs. But in the undersigned's experience, the pro se answer process does not meaningfully filter out such cases from those involving substantive meritorious defenses.

Footnote 3:The fact that the tenant answered the petition does not establish that service was proper, as it is axiomatic that actual notice is not a substitute for compliance with statutory prescriptions (see Parker v Mack (61 NY2d 114 [1984]). Moreover, many tenants report that they only learned of the proceeding and answered after receiving a postcard from the court as mandated by 22 N.Y.CRR 208.42 [i].

Footnote 4:The standard court-approved pro se answer form provided by the Civil Court clerk's office has been amended several times over the years to make it more user-friendly and eliminate legalese (see NYSCEF 4). Unfortunately, it has made little difference in this court's experience, and the current form, available in English only, still contains a long list of confusing check boxes that are rarely checked off and with no warnings that the tenant is potentially waiving the defense of personal jurisdiction by not contesting it in detail in the answer. Even if the form is improved, so long as tenants are forced to rush to court to answer in a matter of days to avoid an automatic default, wait in often long lines, and expected to answer in a matter of minutes, the typical pro se answer in a nonpayment will remain a poor facsimile of a responsive pleading.

Footnote 5:In the undersigned's experience, having observed the process by which a pro se answer is filed in Queens, Brooklyn, and Staten Island, both as a judge and an attorney, the breadth of the answer can vary considerably depending on the particular clerk processing it and the time of day. When it is approaching the 5pm closing time in most boroughs, the likelihood of an oral answer without the aid of an interpreter, who are often not always quickly available outside of Spanish, and with only a general denial, increases exponentially.

Footnote 6:The present system imposes significant discretion on the trial court in determining when to allow the amendment of pro se answers at or before trial, as these litigants rarely if ever file formal motions to amend. Such a system lacks predictability and often places petitioners in the challenging position of responding to defenses that are not raised until trial but that must nonetheless be allowed given the public policy preference in favor of adjudication on the merits. A more predictable system might set a specific time frame for amendment of a pro se answer as of right, following an opportunity consult with free counsel or a conference with the court.