# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 17
Favourite Limited, et al.,
     Appellants,
      v.
Benedetto Cico, et al.,
     Respondents,
et al.,
     Defendant.

Peter Jakab, for appellants.
Sean M. Kemp, for respondents.

WILSON, Chief Judge:

This case concerns the proper scope of the trial court's discretion to grant leave to amend a complaint under CPLR 3025 (b). The Appellate Division dismissed plaintiffs'

second amended complaint in its entirety for lack of standing, leaving only the defendants' counterclaims pending in Supreme Court. Supreme Court then granted plaintiffs leave to file a third amended complaint to cure the standing issue, despite defendants' objections that plaintiffs were instead required to file a new action. The Appellate Division sided with defendants, holding that Supreme Court had no discretion to grant leave to amend a complaint that the Appellate Division had dismissed. We now reverse.

## I.

Plaintiff Upper East Side Suites LLC (UESS) is a Delaware LLC formed in 2006 to acquire a five-story building in Manhattan and rent the apartments within as short-term accommodations.[1] The remaining plaintiffs are investors in UESS. Defendants Carla and Benedetto Cico were the sole managers of the company. The short-term accommodation business was unsuccessful, and the property was eventually sold in a distress sale. The Cicos used the proceeds as a down payment on a separate building, but ended up forfeiting the down payment once that sale failed to close, leaving no money returnable to the investors. The investors allege that the Cicos repeatedly lied to them about these operations and that the purchase of the second building was never authorized or disclosed. After the members removed the Cicos as managers of the company, plaintiffs commenced an action in May 2016 for breach of the operating agreement, breach of fiduciary duty, and other related claims.

---

[1] We take the facts here as pleaded in the complaint.

When the Cicos were removed as managers, and unbeknownst to plaintiffs, Benedetto Cico resigned as the registered agent for UESS. Therefore, in November 2016 the Delaware Secretary of State cancelled the LLC's certification of formation (*see* Del Code Ann title 6, § 18-104 [d]).

The original complaint was dismissed in February 2018 after UESS lost counsel and failed to appear, but the plaintiffs were permitted to file an amended complaint. The investors (but not UESS) timely filed an amended complaint, which Benedetto Cico moved to dismiss, arguing among other things that a suit may not be brought on behalf of a cancelled Delaware LLC. UESS member Sirio SRL then acquired a certificate of revival for UESS, and the plaintiffs cross-moved to file a second amended complaint with both the investors and UESS as plaintiffs. In an October 2018 order denying the motion to dismiss and granting the cross-motion to file the second amended complaint, Supreme Court held that because UESS had been revived, the Cicos' arguments related to the inactivity of the company were no longer relevant.[2]

The Cicos appealed. During the pendency of the appeal, the Cicos filed counterclaims against both UESS and the individual plaintiffs; the counterclaims were based on alleged breaches of the operating agreement. The counterclaims remained

---

[2] The Cicos then moved to dismiss the second amended complaint, claiming that the action was time-barred. Supreme Court denied the motion to dismiss and held that the action was timely. The Cicos also appealed that order, but the appeal was rendered academic by the Appellate Division ruling on the October 2018 order.

pending in Supreme Court throughout the appeal of the October 2018 order granting the motion to file the second amended complaint.

In March 2020, the Appellate Division reversed that order and granted the Cicos' motion to dismiss the complaint, holding that UESS had not been properly revived. The court held that because there was no evidence that the company had authorized Sirio SRL to act on its behalf, the certificate of revival obtained by Sirio was not valid, and UESS therefore continued to lack standing or capacity.

The Appellate Division's decretal paragraph is as follows:

> Order…entered October 30, 2018, which, insofar as appealed from, denied defendants Benedetto Cico's and Carla Cico's motions to dismiss the amended complaint, and granted in part plaintiffs' cross motion for leave to file a second amended complaint, unanimously reversed, on the law, without costs, the motions granted, and the cross motion denied. The Clerk is directed to enter judgment accordingly.

When the case returned to Supreme Court, the plaintiffs informed the court that they would again attempt to cure the revival issue by working with the Delaware Secretary of State. Their efforts culminated in the filing of a new Certificate of Revival in December 2020, with evidence of a vote by membership authorizing the action. The plaintiffs then moved pursuant to CPLR 3025 (b) to file a third amended complaint. The Cicos opposed, arguing that amendment was improper after the Appellate Division had dismissed the previous complaint in its entirety.

Supreme Court granted the motion to amend. The Court reasoned that although plaintiffs could have commenced a separate action under CPLR 205 (a) after the Appellate Division dismissed their claims without prejudice, "it would make no sense, under the

circumstances, for plaintiffs to have commenced another separate action…and then to have moved to consolidate it with this one when this one has always remained active and pending." The Court also noted that the filing of a new action would have been timely on the amendment date.[3]

The Appellate Division reversed in a 3-2 decision. The majority held that its dismissal of the second amended complaint left Supreme Court powerless to entertain a motion to file another amended complaint, because no complaint remained pending to amend. It also separately held that the amendment was time-barred. The dissent concluded that although a complaint dismissed by the Appellate Division with prejudice may not be amended, it is within the discretion of the court of instance to allow amendment of a complaint dismissed without prejudice or not on the merits under certain circumstances. The dissent also reasoned that there was no timeliness issue due to the COVID-19 tolling provisions in Executive Order 202.8, which went into effect shortly after the prior Appellate Division decision.

The plaintiffs appealed as of right under CPLR 5601 (a).

II.

CPLR 3025 (b) states that "[a] party may amend his or her pleading…at any time by leave of court," and that such leave "shall be freely given." In accordance with this

---

[3] In the same order, Supreme Court also granted an earlier motion by the plaintiffs to dismiss the Cicos' counterclaims. This portion of the order was affirmed by the Appellate Division and is not at issue here.

liberal policy, we have stated that a request for leave to amend should generally be granted absent prejudice or surprise to the opposing party (*see McCaskey, Davies and Assoc., Inc. v New York City Health & Hosps. Corp*., 59 NY2d 755, 757 [1983]; *Kimso Apartments, LLC v Gandhi*, 24 NY3d 403, 411 [2014]). The grant or denial of a motion to amend is reviewed for abuse of discretion (*Kimso Apartments*, 24 NY3d at 411).

Here, the issue is not prejudice or surprise—the third amended complaint maintained the same substantive claims the parties had been litigating for years, only adding information related to UESS's revival to ensure that the proper party to pursue those claims was before the court. Rather, the Appellate Division holding rests on the more fundamental premise that when an appellate court has dismissed a complaint in its entirety, the trial court has no discretion to grant leave to amend that complaint under CPLR 3025 (b), even if the dismissal was without prejudice and not on the merits and the defect would be curable by amendment. In the Cicos' view, the plaintiffs' only option after the Appellate Division dismissal was to pursue their claims in a new action within six months under CPLR 205 (a).[4] However, plaintiffs contend that under the circumstances of this case, the trial court also possessed discretion to grant their motion to amend in the original action under CPLR 3025 (b). We agree, and therefore reverse.

---

[4] CPLR 205 (a), a saving statute, allows plaintiffs whose actions are terminated other than on the merits to re-file even if the statute of limitations on the action has elapsed during the course of litigation. It states that when a cause of action is terminated not on the merits, a new action "upon the same transaction or occurrence" commenced within six months will be timely so long as the original action was timely (CPLR 205 [a]).

When an appellate court remits a case to the trial court, further proceedings in the trial court must be consistent with the appellate court remittitur (*see Sayre v People*, 128 NY 622, 622-623 [1891]; *In re Sanford Fork & Tool Co.*, 160 US 247, 255 [1895]; *see also Litchfield Const. Co. v City of New York*, 219 App Div 369, 370 [1st Dept 1927] ["upon remittitur . . ., judgment must be entered in strict accordance therewith"]). In some cases, the only action consistent with the appellate court mandate is for the trial court to terminate the action. For example, if a complaint were dismissed with prejudice by the appellate court, it would be inconsistent with that order for the trial court to entertain a CPLR 3025 (b) motion.

Here, however, the Appellate Division dismissal of the second amended complaint due to lack of standing or capacity was without prejudice (*see Landau v LaRossa, Mitchell & Ross*, 11 NY3d 8, 12-14 [2008]).[5] The order contemplated that the company could "in theory, be revived," but simply stated that Sirio SRL had done so improperly. Therefore,

---

[5] Capacity "concerns a litigant's power to appear and bring its grievance before the court" (*Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 155 [1994]). By contrast, standing concerns whether the litigant "has a sufficiently cognizable stake in the outcome so as to 'cast[ ] the dispute in a form traditionally capable of judicial resolution' " (*id.* at 154, quoting *Society of Plastics Indus. v. County of Suffolk*, 77 NY2d 761, 772–773 [1991]). A company generally has standing to assert claims on its own behalf, but if it is defunct it may lack capacity to do so. Individual members of the company certainly have capacity to appear in court, but their standing to assert claims on behalf to the company may be questioned. Under New York law, dissolution of a corporation does not necessarily preclude individual standing to assert derivative claims (*see* Business Corporation Law § 1006 (b); *Independent Inv. Protective League v Time, Inc.*, 50 NY2d 259, 264 [1980]).

there is nothing in the Appellate Division's order or opinion that would prevent plaintiffs from pursuing their claims after curing the standing or capacity issue.[6]

The question on appeal, then, is whether the Appellate Division's decision required the plaintiffs to commence a separate action instead of seeking leave to file an amended complaint. Whatever the answer to that question might be in a case in which no action remained between the parties in Supreme Court,[7] here the action remained pending in Supreme Court because of the Cicos' counterclaims. Therefore, Supreme Court retained control over the parties and continued to adjudicate claims related to the same transactions that formed the subject-matter of the complaint. For that reason, the Appellate Division order also did not render the case final for purposes of appealability, as no appeal to the Court of Appeals may be taken from an order which leaves claims pending in the action between the same parties (*see Burke v Crosson*, 85 NY2d 10, 15-16 [1995]).

Because the original action remained pending in Supreme Court even after the complaint was dismissed, Supreme Court retained the power to grant leave to plaintiffs to file another amended complaint. The mere fact that a complaint is dismissed by an appellate

---

[6] The dissent argues that because the dismissal was for lack of standing, it could not be cured by amendment (dissenting op at 4-5). Assessing the legal effect of an action taken by members of a cancelled LLC would require analysis of the distinction between standing and capacity as well as relevant statutory and decisional law (*e.g.* Business Corporation Law § 1006; Del Code Ann tit 6, § 18-1109 [c]; *Independent Inv. Protective League*, 50 NY2d at 264). Absent briefing and argument on these issues, we are not convinced that the defect here was consequential or incurable.

[7] That question is not raised here and we express no opinion on it.

court does not generally imply that the trial court lacks such power. Indeed, we have regularly contemplated the possibility that plaintiffs might replead claims at the trial court after they are dismissed by our court (*e.g. A.J. Temple Marble & Tile, Inc. v Union Carbide Marble Care, Inc*., 87 NY2d 574, 585 [1996]; *Abrams v Donati*, 66 NY2d 951, 953 [1985]; *Sanders v Schiffer*, 39 NY2d 727 [1976]). There is nothing particularly novel about repleading a dismissed complaint in Supreme Court to cure a defect discovered on appeal.

Although the Cicos argue that such amendment is possible only when leave to amend is expressly granted by the appellate court, we decline to read silence by the appellate court so broadly. There is no requirement that the appellate court specify the effect of a dismissal. Under CPLR 5013, dismissal before the close of the proponent's evidence is without prejudice unless the court specifies otherwise. Similarly here, although the appellate court may explicitly direct that leave to amend be granted, it is not required to do so in order to preserve the trial court's discretion to grant such leave.

The Cicos also advance a more technical argument—that where the entire complaint has been dismissed, granting leave to amend is not possible because there is no complaint remaining to amend. However, that position is at odds with the common practice of dismissing complaints with leave to amend.[8] If, as the Cicos contend, a dismissed pleading no longer exists and cannot be amended, dismissal with leave to amend would not be

---

[8] For example, the original complaint in this case was dismissed by the trial court with leave to amend.

possible. But appellate courts, not to mention trial courts, regularly dismiss complaints with leave to amend—the action remains pending and the amendment may be granted, notwithstanding the dismissal of the complaint (*see Sanders*, 39 NY2d at 729 [granting such disposition]; *Kelly v Overseas Inv'rs, Inc.*, 18 NY2d 622, 624 [1966] [same]). Because this disposition is consistent with the CPLR, we cannot agree with the dissent's analysis of the language of CPLR 3025 (dissenting op at 6).[9]

Our holding is consistent with the general discretion of the trial court to manage its docket in the interest of judicial economy (*see generally Landis v North Am. Co.*, 299 US 248, 254-255 [1936] [discussing "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"]). As Supreme Court observed, there is no reason to require the

---

[9] Although we have no quarrel with the use of dictionaries as interpretive aids, the definitions relied on by the dissent provide no aid here. The dissent asserts that no amendment can be granted unless a complaint is "extant" (dissenting op at 7), but the only support it cites for that proposition is Black's Law Dictionary, which does not say "extant," but instead, as the very definitions quoted by the dissent say, requires only that the amended complaint "replaces an earlier pleading" or "rectif[ies] or make[s] right." The idea that something that has ceased to exist cannot be replaced, rectified or made right is wholly novel: lost, stolen or destroyed goods can be replaced, rectified or made right. So too it is with legal doctrines or governments that cease to exist and later—sometimes centuries later —are replaced, rectified or made right.

We also clarify that any dictionary definition stating that amendments must be limited to "small changes" (dissenting op at 6) does not correctly state the law: amendments, even those that add entirely new claims, facts, legal theories, causes of action or parties should be granted freely so long as the adverse party is not prejudiced (*see Kimso Apartments*, 24 NY3d at 411 [liberal policy applies "even if the amendment substantially alters the theory of recovery"]; *Fahey v Ontario County*, 44 NY2d 934 [1978] [allowing amendment to advance a statute of limitations defense which was dispositive of the action]; *Kelly*, 18 NY2d at 624 [1966] [allowing amendment to advance an entirely new legal theory]).

commencement of a new action, with the associated cost and inconvenience for both the parties and court, where the court already has jurisdiction over the parties in a case on the same subject-matter. Here, for example, commencing a new action would have required Hague Convention service on parties in Italy at the time of a serious COVID-19 outbreak, for no apparent benefit. The negative practical consequences of depriving trial courts of their docket management powers further counsel against expounding additional requirements from the simple fact that a complaint has been dismissed.[10] The dismissal of the complaint by the Appellate Division did not deprive Supreme Court of its authority to consider an amended complaint that purportedly cured the issue.[11]

### III.

The motion to amend was timely. "A claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading" (CPLR 203 [f]). The claims in the third amended complaint are the same as those

---

[10] The dissent observes that, had Supreme Court dismissed the counterclaims before addressing the motion for leave to amend, "it would have lacked authority" to permit amendment, which is "not what the CPLR intends" because the result would be "controlled by administrative act rather than legal analysis or doctrine" (dissenting op at 10).  But the CPLR is a set of procedural rules, and Supreme Court has discretion as to the order in which it addresses matters before it, which may have practical, procedural and even substantive consequences for the parties.

[11] We have considered the arguments of the parties regarding entry of judgment. Given that under the circumstances of this case entry of judgment is a ministerial act (*see* CPLR 5016 [c]), it is not relevant to our decision here.

in the second amended complaint, which Supreme Court found to be timely—the only difference between the complaints is the explanation of how the company was properly revived. Therefore, the claims in the third amended complaint were timely asserted under the standard for a motion to amend.

The Appellate Division also considered whether the claims would have been timely under CPLR 205 (a). Although CPLR 205 (a) is applicable only to new actions, we understand the concern that a motion to amend which would not have been timely as a new action under CPLR 205 (a) could be used to circumvent the six-month limit given by that statute. Therefore, in a situation like the one presented here, the CPLR 205 (a) time limit could serve as a guidepost to the issue of whether amendment would result in prejudice or surprise. But to be clear, a trial court might grant leave to amend even after the CPLR 205 (a) time limit without abusing its discretion.

In any case, the motion here was also made within the six-month time limit to bring a new action under CPLR 205 (a). The Appellate Division order dismissing the complaint was made on March 3, 2020. On March 20, 2020, Executive Order 202.8 was enacted and tolled all filing periods until November 3, 2020. The clock then ran until the motion for leave to amend was submitted on January 8, 2021 (*see Perez v Paramount Communications, Inc*., 92 NY2d 749, 755 [1999]). Subtracting the tolling period, the motion to amend was filed well within the six months provided by CPLR 205 (a).

## IV.

Because the dismissal of the complaint was without prejudice and other claims in the action remained pending, Supreme Court did not lack discretion to consider plaintiffs'

motion to amend the complaint under CPLR 3025 (b). Accordingly, the order of the Appellate Division insofar as appealed from should be reversed, with costs, and case remitted to that Court for further proceedings in accordance with this opinion.

RIVERA, J. (dissenting):

Previously in this litigation, the Appellate Division dismissed the second amended complaint in its entirety and held that the named company-plaintiff lacked standing and capacity to sue. After that dismissal, the company had only one recourse: commence a new

action under CPLR 205 (a) based on the same transaction or occurrence, if, within that time, it acquired standing to sue. No new action was commenced and instead, plaintiff investors in the company—co-plaintiffs in the dismissed action—sought leave to amend the dismissed complaint because, according to plaintiffs, the company had, since dismissal, acquired standing by filing for a Certificate of Revival and Certificate of Good Standing. The majority here reaches the astonishing conclusion that Supreme Court had authority to grant the motion, effectively circumventing both the Appellate Division's mandate to dismiss and the requirements of the CPLR. The majority's decision is wrong for several reasons. First, there was no lawful ground to grant leave to amend because the defect previously identified by the Appellate Division—that the company had no legal existence when the second amended complaint was filed—could not be cured retroactively. Second, because the Appellate Division dismissed the complaint in its entirety, there was no plaintiff's pleading to amend under CPLR 3025 (b). I dissent.

* * *

Plaintiffs are investors in named company-plaintiff Upper East Side Sites LLC (UESS or "the company"), organized under Delaware law. In 2016, plaintiffs jointly commenced an action against two individuals who they claim mismanaged UESS. After UESS defaulted on the action, Supreme Court granted leave for the then-remaining plaintiffs to file an amended derivative complaint without UESS as a named party, which they did. Thereafter, Supreme Court partially granted the plaintiffs' motion to file a second

amended complaint with UESS again as a named party on its two derivative claims, but rejected a direct fraud claim by the plaintiff investors. On appeal from that order, the Appellate Division in 2020 dismissed the second amended complaint in its entirety (181 AD3d 426 [1st Dept 2020]).

The Appellate Division concluded that UESS had no capacity or standing to sue because, at the time the second amended complaint was filed, Delaware had cancelled its Certificate of Formation and the Certificate of Revival obtained by one of the plaintiff investors was legally ineffective (*id*. at 426-427). The court further concluded that, under the terms of the operating agreement, the plaintiff investors had no authority to act for UESS. "Thus, the company may not sue as a direct plaintiff, and the members thereof may not bring derivative claims on its behalf" (*id*. at 427). Accordingly, the court ordered that "[s]ince plaintiffs lack standing or capacity, this action should be dismissed" (*id*.).

Prior to the Appellate Division's dismissal, defendants filed an amended answer asserting two counterclaims for breach of the company operating agreement. After the Appellate Division issued its order, plaintiffs moved to dismiss the counterclaims, and while that motion was pending, moved in Supreme Court for leave to file a third amended complaint, arguing that a month after the Appellate Division dismissal another Certificate of Revival had been filed—now in accordance with Delaware law—and thus UESS was properly revived and had capacity to sue. Supreme Court granted leave to file a third amended complaint, opining that although a new action would be timely, "[i]t would make no sense, under the circumstances for plaintiffs to have commenced another separate action under a different index number and then to have moved to consolidate it with this one when

this one has always remained active and pending" (2021 NY Slip Op 33636[U], 2021 WL 2396606 [Sup Ct, New York County 2021]). In the same order, Supreme Court dismissed the counterclaims. Hence, the concerns animating Supreme Court's decision to grant leave to amend in order to avoid two actions and a motion to consolidate were illusory and unfounded (*id*. at \*2).

On appeal from that order, the Appellate Division reasoned that because it dismissed all of the claims for lack of standing before plaintiffs filed their motion to amend, "there was no action pending when plaintiffs moved for leave to file the third amended complaint. Thus, the trial court lacked any discretion or authority to grant plaintiffs such leave" (208 AD3d 99, 108 [1st Dept 2022]). Instead, "plaintiffs' only remedy was to commence a new action, which they failed to do" (*id*.).

Although the majority reverses on the ground that the trial court had authority to grant leave to amend, we need not address that issue at all because there was no legal basis to grant plaintiffs' motion in the first instance. Contrary to the plaintiffs' assertion, they did not cure the lack of standing in the underlying action.[1]

"[T]he decision whether to grant leave to amend a complaint is committed to the sound discretion of the court" (*Davis v South Nassau Comm. Hosp*., 26 NY3d 563, 580 [2015]; CPLR 3025 [b]). Generally, "leave to amend a pleading should be freely granted in the absence of prejudice to the nonmoving party where the amendment is not patently lacking in merit" (*id*.). It is axiomatic that no purpose is served by granting a motion to

---

[1] For purposes of this appeal, I assume that UESS was revived effective December 11, 2020, the date the certificate of revival was filed with the Delaware Secretary of State.

amend where the fatal defect in the pleading remains uncorrected. A trial court's broad discretionary authority does not extend to a meritless motion. Here, in support of their motion to amend, plaintiffs claimed that they remedied the defect that was the basis for the 2020 Appellate Division dismissal when, *after* that dismissal, UESS properly filed a Certificate of Correction of the Certificate of Revival and a Certificate of Revival of a Delaware Limited Liability Company.[2] But the Appellate Division's conclusion that UESS lacked standing and capacity to sue was related temporally to the only pleading before that court—the second amended complaint. Unlike a pleading defect where a party fails to assert an existing fact that would have established standing, the defect here was legal, not factual, and related to the company's prior status. The certificate issued after the 2020 dismissal could not retroactively provide UESS with standing to sue defendants; at most, a newly-issued certificate could have revived UESS as of the effective date of the certificate's issuance and authorized UESS to sue in a future action. While a non-merits dismissal does not always foreclose an amendment to cure a pleading defect, the nature of the problem here—UESS's unrevived status due to the certificate signatory's lack of authority to represent the company at the time the second amended complaint was filed— could never be cured retroactively by obtaining a certificate after the Appellate Division's

---

[2] Plaintiffs have not argued on this appeal that the Appellate Division erroneously concluded its prior Certificate of Revival was ineffective. Therefore, I have no occasion to consider the propriety of that decision.

dismissal.[3] Therefore, Supreme Court abused its discretion when it granted leave to amend a complaint without merit and the Appellate Division should be affirmed.

Putting aside the majority's erroneous implicit holding that Supreme Court decided that motion on a legally sound basis, the majority's express reasons for concluding that leave to amend was properly granted are based on a flawed interpretation of the CPLR and a misreading of the Appellate Division's mandate.

Under CPLR 3025 (a), a party may amend their pleading at any time by leave of court. However, in order to amend, there must actually be a pleading to amend, and it must be the movant's own pleading. Black's Law Dictionary defines a pleading as "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses" (Black's Law Dictionary, 1394 [11th ed 2019]). To "amend" means "to correct or make usu[ally] small changes to (something written or spoken); to rectify or make right," and an "amended complaint" means "a complaint that modifies and replaces the original complaint by adding relevant matters that occurred before or at the time the action began" (*id*. at 101, 1395; *see also* Merriam-Webster Online Dictionary, amend [https://www.merriam-webster.com/dictionary/amend] [defining

---

[3] The majority argues that "[a]ssessing the legal effect of an action taken by members of a cancelled LLC would require analysis of the distinction between standing and capacity as well as relevant statutory and decisional law," and concludes that without briefing and argument on those issues it cannot say the standing defect "was consequential or incurable" (majority op at 8 n 6). The majority chooses to ignore that Supreme Court recognized, over defendants' objection, the "certificates of correction and revival" in its order granting plaintiffs leave to amend. And if plaintiffs did not cure the defect there is simply no legal basis to permit leave to amend. Thus, we are squarely presented with the question whether plaintiffs could retroactively cure their lack of standing by post-dismissal action.

"amend" as "to put right"]).[4] Similarly, an "amended pleading" is a "pleading that replaces an earlier pleading and that contains matters omitted from or not known at the time of the earlier pleading" (*id*. at 1395). Thus, by definition, there must be an extant pleading capable of amendment for an amendment to be effective.[5] Here, once the Appellate Division dismissed the second amended complaint in its entirety, that pleading no longer had any legal significance; it simply ceased to exist as the plaintiffs' statement of the causes of action against defendants. Put another way, when plaintiffs moved to file a third amended complaint, there was no complaint to amend.

---

[4] The majority takes issue with my reference to Black's Law Dictionary, but "dictionary definitions have traditionally been regarded as useful guideposts in ascertaining the meaning of a word or phrase" (*Village of Chestnut Ridge v Howard*, 92 NY2d 718, 723 [1999]). Indeed, it is a frequent and long-standing practice of members of the judiciary, including those in the majority here, to use dictionaries—legal and otherwise—to interpret the law (*see e.g. Avella v City of New York*, 29 NY3d 425, 435 [2017] [Wilson, J.]; *Consolidated Restaurant Op., Inc. v Westport Ins. Co*., 2024 NY Slip Op 00795, *3 [Ct App Feb. 15, 2024] [Halligan, J.]; *Anderson Commack Fire District*, 39 NY3d 495, 504 [2023] [Cannataro, J.]; *Nitkewicz v Lincoln Life Annuity Co*., 40 NY3d 349, 355 [2023] [Singas, J.]). The majority also takes issue with Black's Law Dictionary's reference to "small changes" in one of its definitions of "amend" (majority op at 10 n 9), but conveniently ignores the complete dictionary reference: "amend" also means "to rectify or make right," and an "amended complaint" "modifies and replaces the original complaint." There is no question that these definitions support an interpretation that an amended pleading can "add entirely new claims, facts, legal theories, [or] causes of action or parties" (*id*.). The definitions do not support the majority's view that changes can be made to a pleading that has been completely removed from the action by dismissal.

[5] The majority disagrees with this proposition because the word "extant" does not appear in any of the relevant definitions (majority op at 10 n 9). But the only logical interpretation of the cited definitions requires an extant pleading; if there is no pleading in existence, then there can be nothing to "rectify or make right," and nothing that the amended complaint "modifies and replaces."

The majority's reversal here proceeds from two erroneous assumptions. First, that because the Appellate Division's "order contemplated that the company could 'in theory, be revived,'" but plaintiffs failed to effectively do so, the Appellate Division did not foreclose an amendment (majority op at 7). This is a misreading of the Appellate Division's 2020 order, which stated that UESS could have been revived but that it never was (181 AD3d at 427). That clear pronouncement settled once and for all UESS's status at the time the second amended complaint was filed. The Appellate Division's order cannot reasonably be understood, as the majority suggests, to have anticipated that UESS could, by some future act, reach back years to a date when UESS did not exist as a legal entity under the laws of Delaware and retroactively revive itself. Even if there were any conceivable doubt on this point, the Appellate Division's 2022 opinion and order, now before us on this appeal, laid it to rest by characterizing its 2020 order as an "outright dismissal of the claims," which "was binding on the parties," and observing that its "dismissal presented a unique procedural scenario that deprived Supreme Court of discretion to grant leave to amend the second amended complaint" (208 AD3d at 108) Moreover, the court also reaffirmed its commitment to "the basic principle that an order of the Appellate Division unconditionally dismissing a complaint is a clear and unequivocal directive that the case is no longer active and pending" (*id*. at 110). Supreme Court could not ignore that mandate by allowing plaintiffs to amend a dismissed complaint.[6]

---

[6] The majority does not address plaintiffs' principal argument that, under *Rudiger v Coleman* (228 NY 225 [1920]), Supreme Court complied with the Appellate Division's mandate. Regardless, plaintiffs' reliance was misplaced. *Rudiger* involved a land dispute where ultimately this Court remitted to the trial court to enter judgment to direct

However, there was a path available to plaintiffs to pursue their claims. With the new Certificate of Revival in hand, plaintiffs could have filed a new action pursuant to CPLR 205 (a), which permits commencement of a new action based upon the same transaction or occurrence or series of such within six months after the termination of an action for a non-merits ground like lack of standing. Plaintiffs did not avail themselves of that saving statute.[7] Despite the majority's decision today, CPLR 3025 (b) should not be

---

reconveyance of the property, reassignment of the subject contract and an accounting for rents collected by the defendants (*id*. at 230). The defendants argued that it was impossible to comply with the decree of reconveyance because during the pendency of the appeal, part of the land had been condemned by New York City, and the defendants had taken certain other actions on the land (*id*. at 231). Special Term entered a new interlocutory judgment to adjust for the changed conditions, and this Court upheld that judgment as a proper exercise of the lower court's power to adapt the form and measure of relief to the exigencies of new conditions (*id*. at 233). The adaptation was "not nullification, but enforcement" (*id*.). *Rudiger* stands for the proposition that, upon a remittal from an appellate court, the lower court may fashion an appropriate remedy to comply with the remittal order based on changed circumstances of which the appellate court could not have been aware before remittal. Here, the ground for the 2020 dismissal of the second amended complaint was an ineffective attempt to revive UESS with a certificate obtained by someone lacking authority to act for the company. The post-dismissal Certificate of Revival filing in Delaware does not constitute a change in circumstances of which the Appellate Division was unaware at the time, but rather a response to the defect it identified that could provide standing in a future action.

[7] Any practical difficulties in filing that action were no greater than for any other litigant during the same period. The majority points to the inconvenience that filing a new action would pose to plaintiffs here, namely, that "a new action would have required Hague Convention service on parties in Italy at the time of a serious COVID-19 outbreak" (majority op at 11). But it was only one defendant, Carla Cico, whom the plaintiffs believed was residing in Italy and plaintiffs make no assertion that they could not seek alternative service. The other defendant, Benedetto Cico, resided in California, which, like New York, had extended filing deadlines in response to the pandemic (*see* Blaine Corren, *Judicial Council Revises Emergency Rule on Statutes of Limitations in Civil Cases*, California Courts          Newsroom          [May          29,          2020],          available          at

understood by practitioners as a convenient replacement for CPLR 205 (a). Indeed, reliance upon CPLR 3025 (b) is a high-risk venture, as a court may deny leave to amend after the deadline for a new action under CPLR 205 (a) has passed.

The majority's second erroneous assumption is that, because of defendants' counterclaims, "the original action remained pending in Supreme Court even after the complaint was dismissed" (majority op at 8). Though it does not say so expressly, the logical conclusion of the majority's holding is that revival of a complaint via leave to amend is possible only in circumstances where counterclaims are pending before the trial court at the time the plaintiff seeks leave to amend. The majority stops short of endorsing the far more dubious proposition that a trial court has the power to revive a complaint where there is no longer an action before it, all claims having been dismissed or dismissal affirmed by an appellate court (majority op at 8 & n 7).

In any event, this procedural "hook" fails to hold up because Supreme Court disposed of the defendants' counterclaims in the same judicial order in which it granted plaintiffs' motion for leave to amend. Under the majority's view, if Supreme Court had first signed a separate order dismissing the counterclaims, it would have lacked authority to issue another order permitting amendment. That change in outcome, controlled by administrative act rather than legal analysis or doctrine, is not what the CPLR intends. No matter how the majority characterizes it, the procedural posture did not change the fact that

---

https://newsroom.courts.ca.gov/news/judicial-council-revises-emergency-rule-statutes-limitations-civil-cases [accessed March 4, 2024]).

there was no existing pleading interposed by the plaintiffs to be amended. The only pleading in the action was the defendants' amended answers which included the counterclaims. Plaintiffs could have responded to the counterclaims, but they could not have asserted a counterclaim in their reply to the counterclaims (1 West's McKinney's Forms Civil Practice Law and Rules § 1:2 [2024] ["(I)f plaintiff has a counterclaim to one of defendant's counterclaims, plaintiff may not assert that counter-counterclaim in a reply. Rather, plaintiff must amend the complaint"], citing CPLR 3011). Thus, no plaintiff pleading was before the trial court.

The majority doubles down, contending that "[t]here is nothing particularly novel about repleading a dismissed complaint in Supreme Court to cure a defect discovered on appeal" (majority op at 9). But this would be true if the defect can be cured by future action and the appellate court does not dismiss the entire complaint. Neither of those circumstances exist here.[8]

The fact that the Appellate Division's dismissal for lack of standing is not on the merits and thus generally without prejudice is not in dispute, nor do either of these unexceptional observations aid the majority. The dismissal had consequences for plaintiffs

---

[8] The majority's citation to CPLR 5013 is curious and adds nothing to its analysis. That section simply states that "[a] judgment dismissing a cause of action before the close of the proponent's evidence is not a dismissal on the merits unless it specifies otherwise, but a judgment dismissing a cause of action after the close of the proponent's evidence is a dismissal on the merits unless it specifies otherwise." There is no dispute that the dismissal here was not on the merits or that a party could seek to amend a pleading before its dismissal. Section 5013 does not stand for the proposition, as suggested by the majority, that all dismissals are without prejudice unless the court says so expressly (majority op at 9).

beyond a rejection of their legal argument, because the grounds for dismissal limited the plaintiffs' litigation strategy moving forward. The majority confuses a nonmerits dismissal without prejudice to amend with the class of dismissal here, which was without prejudice *to file a new action* (see NY Jur Judgments § 414 ["A judgment of dismissal that recites that it is rendered without prejudice does not operate as a bar precluding the plaintiff from maintaining another action upon the same cause of action"]).[9] Examples of the former include cases, like those cited by the majority where the complaint fails to state a cause of action due to some missing factual assertion (majority op at 9, citing *A.J. Temple Marble & Tile, Inc. v Union Carbide Marble Care, Inc*., 87 NY2d 574, 585 [1996]; *Sanders v Schiffer*, 39 NY2d 727 [1976]). In contrast, the Appellate Division's dismissal on standing grounds requires that the party's status be corrected. If that correction has only future effect, as here, the party cannot retroactively establish standing by amendment of a dismissed complaint. A trial court's power to manage its docket cannot supersede the commands of an appellate court's mandate and the CPLR.

An affirmance here would not, as the majority claims, "depriv[e] trial courts of their docket management power" (majority op at 11). They retain that power so long as they

---

[9] The "common practice of dismissing complaints with leave to amend" is of the majority's own making (see majority op at 9). It is also a mischaracterization of a court's authority to dismiss with leave *to replead* or to stay a proceeding so that a party may cure a nonjurisdictional defect. With respect to the majority's observation that the original complaint in this litigation was dismissed with leave to amend, Supreme Court made clear that the plaintiffs were granted leave to timely replead, and if they failed to do so, the court would then issue an order dismissing the action with prejudice. That is not what occurred here, because the Appellate Division dismissed the complaint for lack of standing, leaving no recourse to replead but only to refile a new action.

comply with appellate court mandates upon remittal and render orders in accordance with the CPLR.  Here, Supreme Court acknowledged that, as a legal matter, plaintiffs could have filed a new action under CPLR 205 (a), but the court simply thought it better to avoid that process and allow plaintiffs to amend. However, the Appellate Division mandate left no discretion to the trial court and thus an amendment was not a legally viable option.

The Appellate Division correctly held that Supreme Court had no authority to grant plaintiffs' motion. I would affirm.

Order insofar as appealed from reversed, with costs, and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein. Opinion by Chief Judge Wilson. Judges Singas, Cannataro and Halligan concur. Judge Rivera dissents and votes to affirm in an opinion, in which Judges Garcia and Troutman concur.

Decided March 19, 2024